17762

STATE, Respondent, v. Charlie ROBINSON, Appellant
(119 S. E. (2d) 671)

*Messrs. Jerry M. Hughes, Jr.,* and *Edward Mirmow, Jr.,* of Orangeburg, *for Appellant,*

*Messrs. Julian S. Wolfe, Solicitor,* of Orangeburg, and *Gressette & Gressette,* of St. Matthews, *for Respondent,*

April 4, 1961.

Moss, Justice.

At a Court of General Sessions held in St. Matthews, South Carolina, in February, 1960, Charlie Robinson, the appellant herein, was indicted by the Grand Jury of said County and charged with (1) rape, (2) assault with intent to ravish, and (3) assault and battery of a high and aggravated nature. The indictment alleged the crimes took place in Calhoun County, South Carolina, on December 5, 1959. The appellant was duly arraigned upon said indictment, and being without counsel, a plea of not guilty was entered for him by the Presiding Judge, and thereafter, counsel was appointed to defend the said appellant. Upon motion duly made and heard in Calhoun County, the venue of this case was changed to Orangeburg County.

The appellant, Charlie Robinson, a Negro, who resided near Cameron, South Carolina, was tried at a special term of the Court of General Sessions held in Orangeburg County, South Carolina, commencing on June 29, 1960. He was convicted of rape and sentenced to death. Section 16-71,

16-72, of the 1952 Code of Laws of South Carolina. Following the conviction, a motion for a new trial was made, heard and denied. Timely notice of intention to appeal to this Court was given.

It appears from the evidence that the prosecutrix, a white woman, fifty-eight years of age at the time of the trial, was employed in Cameron, South Carolina, in the office of her son, who was a cotton broker, gin operator and a farmer. She was a widow and lived alone in the family residence located on Highway No. 176, in the town of Cameron. The prosecutrix went to bed at about 1:00 o'clock on the morning of December 5, 1959, and occupied an upstairs bedroom. At approximately 5:00 o'clock she was awakened by her feet being grabbed by a man, who first inquired if she had any money. He was told that the money she had was downstairs in her den. It was then that the intruder announced his purpose of having sexual relations with her and told her, "If you turn on a light I will kill you." He then placed his hands around her neck and told her if she screamed he would kill her. She testified that this man assaulted her twice, without her consent and against her will, because of the force used and the threats made. After the prosecutrix had been assaulted twice, she was forced to put on her pajamas and bedroom slippers and to accompany him downstairs to the den and was required to turn over to him certain money which consisted of a five dollar bill and two ten dollar bills. While downstairs, the intruder made the prosecutrix remove her pajamas and place them in a lavatory in the bathroom. She was allowed to get a coat from a downstairs closet and made to go out into the front yard of her house with her assailant. She testified that out in the yard she saw, for the first time, that her assailant was a Negro man. She was able to see the appellant because it was approximately daylight and also because of the reflected light from a passing automobile. Positively identifying the appellant, she testified as follows:

"Q. Did you get to look at the person? A. Yes.

Q. State whether or not you can recognize that person? A. Yes, I do.

Q. Do you see him in this courtroom? A. Yes.

Q. Where is he? A. Right there. (Indicating the defendant.)

Q. Is that the defendant, Charlie Robinson? A. Yes."

The prosecutrix described her escape from the appellant, and in so doing she lost her bedroom slippers in her front yard, and ran barefooted to the house of a neighbor, where she related what had happened to her. At this neighbor's house, the prosecutrix was seen by her daughter-in-law. The daughter-in-law testified that when she got to the neighbor's house that her mother-in-law "looked terrible, dishevelled, dirty, bruised, and was very nervous." She testified that her mother-in-law was first seen by Dr. M. E. Borgstedt and, thereafter, by Dr. O. Z. Culler.

Dr. Borgstedt was called as a witness in behalf of the State and testified that he first saw the prosecutrix at the home of the neighbor above referred to, and that she was emotionally upset. Thereafter, the prosecutrix was removed from the home of the neighbor above referred to and taken to the office of this physician, where he made a complete examination. He testified that he found a mucosal tear about one inch in length in the left lateral wall of the vagnia. He further testified that he made a microscopic examination of the material found within the vagina and this showed the presence of male spermatozoa.

Dr. O. Z. Culler testified that on December 5, 1959, he examined the prosecutrix in the hospital in Orangeburg, South Carolina. He found her to be in a highly nervous state from an emotional standpoint. He further testified that he found a one-inch laceration in the left side of the vaginal canal, such being sufficient to cause bleeding.

M. H. Rowell, Sheriff of Calhoun County, assisted in the investigation of this case. He testified that he arrived at the

home of the Prosecutrix and found a pair of bedroom slippers in the front yard. He examined the bed of the prosecutrix and found it in disorder, with bloodstains on the covering. He found a Pall Mall cigarette between the covers of the bed. The prosecutrix had previously testified that her assailant was wearing a light colored sport coat and light colored pants. The sheriff testified that when he saw the appellant he had on a grey colored sport coat and khaki pants. These clothes were identified and offered in evidence. The sheriff had previously turned the clothes over to the South Carolina Law Enforcement Division for examination. He further testified that after the appellant was arrested and carried to the sheriff's office in St. Matthews, he examined the clothes worn by the appellant and observed stains on his underwear which resembled bloodstains. There were similar stains on the sport coat and on the inside of the fly and along the front of the trousers. There were likewise similar stains on the shorts worn by the appellant. He testified that he found two ten dollar bills and one five dollar bill in the pocket book of the appellant. He removed from the shirt pocket of the appellant a partly used package of Pall Mall cigarettes.

W. W. Swearingen, a member of the State Highway Patrol, assisted other officers in investigating this case. He says that he went to the home of the prosecutrix and shortly thereafter the appellant arrived in custody of another officer. He testified that the appellant told him that he had been to a "juke joint" in Orangeburg County, just below Cameron, and that he had left this place with one David Zeigler, but on account of tire trouble the appellant left the car at a point approximately four hundred to five hundred feet west of the home of the prosecutrix. He further testified that he was present when the appellant removed his clothes in the office of the sheriff and he observed what appeared to be blood on the fly of the trousers of the appellant and on his shorts.

D. H. Rast, a Deputy Sheriff of Calhoun County, testified that he arrested the appellant about 7:10 a. m. while he

was walking along Highway No. 176, about a mile from the residence of the prosecutrix. He testified that when he arrested the appellant he did not have on a hat but was wearing tan trousers and a light colored sport coat. The prosecutrix had testified that her assailant did not have on a hat and that he wore a light sport coat and light colored trousers. During the cross examination of Deputy Rast by counsel for the appellant, he was asked, "When you stopped he didn't attempt to run, did he?" and this witness answered, "When I stopped, I asked him where he was going. He said, 'I am going to the probition office.' I said, 'This time of day?' He said, 'That's right.' "

James K. Wilson, a laboratory technician with the South Carolina Law Enforcement Division, testified that he examined the clothes of the appellant and found human blood on the shorts, coat and the trousers. This witness also testified that the blood he found on the clothes of the appellant was Type "O". There was also testimony by A. H. Carroll, a medical technologist, and by Dr. F. H. MacCauley, that a sample of blood was drawn from the prosecutrix and an examination showed that it was Type "O Positive".

J. Frank Faulk, an officer with the South Carolina Law Enforcement Division, assisted in the investigation of this case and made a number of photographs taken at the residence of the prosecutrix. One of these photographs showed the front yard area of the home of the prosecutrix and the two bedroom slippers on the ground. Another photograph was of the downstairs bathroom and showed a pair of pajamas in the lavatory.

Dave Zeigler testified that he, the appellant, Jimmy Glover, and Cudney Haynes, had visited Praelleau Funchess' place and that they left this place after midnight on December 5, 1959. This witness testified that he let the appellant out of his car about two or three o'clock at the same place pointed out in the testimony of W. W. Swearingen, and the appellant started walking in the direction of the home of the prosecutrix.

At the close of the testimony in behalf of the State, the appellant, through his counsel, announced that he would offer no testimony. The appellant made a motion for a directed verdict on the ground that there was a lack of evidence to prove the crime of rape. This motion was refused by the Trial Judge. The evidence in behalf of the State was sufficient to require the Trial Judge to overrule the motion for a directed verdict and submit to the jury the question of the guilt of the appellant.

The appellant urges as error that the Trial Judge should have declared a mistrial when the witness Rast testified that the appellant told him that he was on his way to the "probition office". He, likewise, urges error in the failure of the Trial Judge to grant a new trial because of this testimony, and that the Court should have instructed the jury to disregard this statement.

It is the contention of the appellant that to permit the witness Rast to testify that he said he was on his way to the "probition office" was evidence that the appellant had been convicted of another crime. The foregoing evidence was given by the witness during his cross examination by counsel for the appellant. There was no objection interposed by the appellant when this testimony was given, nor did he make a motion for a mistrial. The appellant did not request the Trial Judge to strike the foregoing testimony nor to instruct the jury to disregard the same. The appellant waited until he had been found guilty and then asserted in his motion for a new trial that the foregoing evidence was incompetent and prejudicial.

We have held that in order to constitute reversible error, in the admission of testimony, the accused must be prejudiced thereby and the burden is upon him to satisfy this Court that there was prejudicial error. *State v. Glover,* 91 S. C. 562, 75 S. E. 218; *State v. Smith,* 230 S. C. 164, 94 S. E. (2d) 886 and *State v. Bullock,* 235 S. C. 356, 111 S. E. (2d) 657.

In the case of *State v. Bigham,* 119 S. C. 368, 112 S. E. 332, it was held that where the question propounded to a witness is not objectionable, but if the answer of the witness to the question is objectionable, the defendant should make a motion to strike out the answer. *State v. Mills,* 79 S. C. 187, 60 S. E. 664.

In the case of *State v. Hester et al.,* 137 S. C. 145, 134 S. E. 885, 892, we find this statement:

"* * * It does not appear that the attorney raised any objection that the answers were not responsive to his questions. There was no motion to strike out the answers, or either of them, and there was no request made of the Court to have the jury disregard the testimony brought out. Under these circumstances we are unable to discover any error even if the responses to the questions had been improper. * * *"

The question propounded by counsel for the appellant to the witness Rast was perfectly proper, and if the answer thereto was improper or inadmissible, it was the duty of the appellant to request the Trial Judge to strike out the testimony and instruct the jury to disregard the same. The appellant did not follow this procedure.

We have also held that a defendant may not reserve vices in his trial, of which he has notice as here, taking his chances of a favorable verdict, and in case of disappointment, use the error to obtain another trial. *State v. Simon,* 126 S. C. 437, 120 S. E. 230; *State v. Burnette,* 226 S. C. 421, 85 S. E. (2d) 744, and *State v. Alexander,* 230 S. C. 195, 95 S. E. (2d) 160.

The appellant asserts that the statement of the witness Rast that that the appellant told him that he was on his way to the "probition office" tended to create in the minds of the jury the inference that the accused had committed another crime. We do not think that such is the inference to be drawn from this statement. Assuming that the appellant meant by his statement that he was on the way to the proba-

tion office, this did not show that he had been convicted of any crime.

In the case of *State v. Bullock, supra,* which was an electrocution case, we held that the admission of testimony by a physician that when he examined the body of the deceased she was clothed in a dress without underwear and that there was some discharge from her vagina, was not error, because such testimony did not tend to create in the minds of the jury the inference that the accused had committed the crime of rape upon the deceased. The showing here is not as strong as that made in the *Bullock case.* We also point out that the State did not attempt to prove that the appellant had been convicted of some other crime. We do not think that the testimony referred to creates the prejudicial inference asserted by the appellant. In this connection see the cases of *State v. Britt et al.,* 235 S. C. 395, 111 S. E. (2d) 669; *State v. Gregory,* 198 S. C. 98, 16 S. E. (2d) 532; and *State v. Hariott et al.,* 210 S. C. 290, 42 S. E. (2d) 385.

In considering this exception, it is well to keep in mind the rule that where, as here, the only rational conclusion warranted by the evidence is that the accused is guilty, the judgment of conviction should not be set aside because of unsubstantial errors not affecting the result. *State v. Chasteen,* 228 S. C. 88, 88 S. E. (2d) 880; and *State v. Fuller,* 227 S. C. 138, 87 S. E. (2d) 287. The exception here asserted is found to be without merit and is overruled.

The appellant asserts that the Trial Judge committed error in refusing to order a new trial on the ground that the Solicitor, in his argument to the jury, commented on the fact that the defendant did not take the witness stand and testify in his own behalf.

The argument to which the appellant excepts is as follows:
"If you remember the first witness we placed on the stand was named Zeigler. He testified that he had been to Praelleau Funchess' place that night and it is not denied or dis-

puted, and they left there about three or three-thirty o'clock, as I remember the testimony, in an automobile. I asked him specifically, 'Did you have a clock or know the time?' He said he didn't. And what did he do? He brought this colored man, this defendant, into the town of Cameron and put him out as I remember about two blocks from where this good lady lives. Why didn't he go home?. Why didn't he go to his own domicile? No, Mr. Foreman and gentlemen of the jury, he had lust on his mind and as I view it, robbery. He got out there and he left this man, Dave Zeigler. Is that contradicted or denied?"

Again we quote from the record a part of the Solicitor's argument as follows:

"In order that there were no possible error being committed, immediately upon this act being committed, they got in touch with Dr. Borgstedt, whom you heard testify on the stand on yesterday and he told you of the examination of that good lady, of the scene, of where it took place and such slides were taken showing that unquestionably intercourse had taken place as shown by the slides.

"I say to you, Mr. Foreman and gentlemen of the jury, where and how could we bring to you more positive and unquestioned evidence. And it is certainly not disputed or denied."

The 1895 Constitution of this State, Art. I, Sec. 17, provides: "No person * * * shall be compelled in any criminal case to be a witness against himself." Section 26-405 of the 1952 Code of Laws, provides: "In the trial of all criminal cases the defendant shall be allowed to testify if he desires to do so, and not otherwise, as to the facts and circumstances of the case. * * *" In the case of *State v. Howard,* 35 S. C. 197, 14 S. E. 481, 482, it was said:

"* * * To our minds, these two provisions, one of our constitution and the other of our statute law, look to an absolute freedom of defendants, in all criminal cases, as to testifying; the former indicates that such a one shall not be

forced to testify, while the latter is purely permissive, provided he chooses to do so. This being the case, it almost of necessity follows that nothing shall result to his prejudice from a failure to testify."

It is, of course, improper for the Solicitor, or any attorney for the State, to comment on or to make any reference in his argument to the fact that the accused failed to testify as a witness in his own behalf. *State v. Howard, supra; State v. Pendarvis,* 88 S. C. 548, 71 S. E. 45; *State v. King,* 158 S. C. 251, 155 S. E. 409; *State v. Chasteen,* 228 S. C. 88, 88 S. E. (2d) 880; and *State v. Allen,* 231 S. C. 391, 98 S. E. (2d) 826.

The conduct of a trial must be left largely to the discretion of the Presiding Judge, and this Court will not interfere unless it clearly appears that the rights of the complaining party were abused or prejudiced in some way. One seeking a new trial because of unfair or improper argument on the part of counsel for the successful party should show that: (1) Timely objection was interposed to the argument; (2) The substance, at least, of the objectionable language; (3) The failure of the Court to sufficiently warn the jury not to consider the improper argument; and (4) That the result was to materially prejudice the right of the losing litigant to obtain a fair and impartial trial. *State v. Cannon,* 229 S. C. 614, 93 S. E. (2d) 889; *State v. Meehan,* 160 S. C. 111, 158 S. E. 151; and *State v. Hinton,* 210 S. C. 480, 43 S. E. (2d) 360. In the case of *State v. King,* 158 S. C. 251, 155 S. E. 409, this Court held that the proper practice, when the prosecuting attorney refers to the failure of the defendant to testify, is for his counsel to interpose immediate objection and have the Trial Judge rule on the matter; and if the objection is sustained, for him to admonish both the attorney and the jury. Measured by the required standards, we find from the record that the argument of the Solicitor was not objected to when made and no ruling thereon was requested from the Trial Judge by the appellant. The matter was first brought to the attention of

the Trial Judge after the rendition of the verdict by the jury and when a motion for a new trial was made. It thus appears that the appellant did not follow the procedure above outlined. However, even though no timely objection was properly made by the appellant to the argument of the Solicitor, we will consider the exception thereto *in favorem vitae.*

In the case of *State v. Howard, supra,* the defendant was convicted of murder and sentenced to death. The Solicitor, in his argument to the jury, commented upon the failure of the defendant to testify by saying: "Now gentlemen, if he did not make the confession, why did he not go upon the stand and deny it? He is present in Court and could have done so." This Court, in refusing a new trial upon this ground, said:

"* * * In this connection, however, we may add that the circuit judge checked any ill resulting to the defendant therefrom by promptly charging the jury that it was the right of the defendant to testify or not, as he might choose, and that no inferences to his prejudice should result therefrom. We therefore in this instance overrule this ground of appeal. * * *"

In the case of *State v. Pendarvis, supra,* where the defendant was tried for murder, the Solicitor, in his argument to the jury, said, "I am not going to comment on the fact, that the defendant did not take the stand, but I have often thought, that if I were being tried on a charge like this, that I * * *" Thereupon objection was made by counsel for the defendant and the Trial Judge commented, "You had better not comment on that, Mr. Solicitor." This Court, in refusing to grant a new trial, stated that while the remark made by the Solicitor was not proper it was reasonable to suppose that such did not influence the verdict.

In the case of *State v. Glover, supra,* where the defendant was convicted and sentenced to death for an assault with intent to ravish, it was charged that the trial Court erred in

permitting the Solicitor to draw to the attention of the jury the fact that there was no testimony introduced by the defendant. The Court, in refusing to grant a new trial on this ground, stated that it was only necessary to refer to the charge of the Court to show that this exception could not be sustained. It was held that the objection, that the Court permitted the Solicitor to call the attention of the jury to the fact that the defendant did not testify, was cured by the finding of the Court that he did not so comment on it, within the meaning of the law, and by the instruction that if the jury concluded that he did, they should not permit that to influence them.

In the case of *State v. King, supra,* the defendant was convicted of murder and sentenced to death. Certain of the exceptions charge error in permitting the attorney to criticize the defendant for his failure to testify as a witness. The Court said that the record shows only one instance where, during the arguments, complaint was made of the remarks of an attorney in this respect. Upon objection being entered, the attorney promptly apologized for his resmarks, and the Court admonished the jury not to consider them. Under the circumstances this Court found no error.

In the case of *State v. Wilkins,* 217 S. C. 105, 59 S. E. (2d) 853, 855, the defendant was convicted of an assault with intent to ravish. In the argument of the Solicitor to the jury, he stated:

"Rapists and robbers, and burglars and killers, and those bent upon those kinds of crimes don't operate that way. They don't send out word 'I am going to enter the kitchen window of the Nurses' home'. Talk about officers and buck-passing—they want to pass the buck to you—We pass the buck to no one; we have brought you the evidence, evidence that cannot be and is not disputed * * *."

When the above statement was made in the argument, a motion was made by the appellant for a mistrial on the ground that the Solicitor had commented on the fact that

the appellant did not take the stand to testify and deny the testimony of the State. The Trial Judge refused to grant the motion for a mistrial, and upon appeal to this Court, his action thereabout was affirmed, and this Court said:

"We agree with the trial Judge that the remarks of the Solicitor were close to the border line, and that it was possible to draw the inference that he could have been referring to the fact that the defendant-appellant did not go upon the witness stand in his own behalf, but we seriously doubt if such inference registered in the minds of the jury. If such inference was conveyed to the mind of any one or more of the jurors, the trial Judge off-set same by charging them as follows: 'The defendant in this case has offered no testimony in his behalf. That is his prerogative, and it is not a circumstance that you can take into your consideration, or even allow to enter into your discussions in your juryroom. Under the Constitution of South Carolina, and under the Constitution of the United States, it is his perogative to go forward, or to remain silent, and the burden of proof is upon the State of South Carolina to establish his guilt by competent testimony beyond a reasonable doubt.' Of course if the Solicitor had, in his argument, directly referred to the fact that the appellant did not go upon the witness stand, it would have been the duty of the trial Judge to declare a mistrial when such was brought to his attention."

In the case of *State v. Chasteen, supra* [228 S. C. 88, 88 S. E. (2d) 886], the defendant was indicted for murder, found guilty, and sentenced to death by electrocution. During the course of the argument by the Solicitor, he stated that: Of course, we will never know exactly what happened, because he was the only one here who can tell us, but he ain't going to tell us, you know." This Court held that the words, "he ain't going to tell us", when considered in connection with the rest of the argument, was not to direct the jury's attention to the defendant's failure to take the stand and testify during the trial, but even if the jury received such an impression, its effect was removed by express instruction

to the jury that defendant's failure to take the witness stand and testify on his own behalf did not create any presumption against him.

In the instant case, it is evident that counsel for the appellant did not, at the time, construe the argument of the Solicitor as a comment on the failure of the appellant to testify because no objection was made. The Trial Judge did not get the impression that the argument of the Solicitor amounted to a comment on the failure of the appellant to testify.

The appellant urges that even though the Solicitor did not mention the defendant by name, his reference to undisputed and undenied testimony, and unquestioned facts, could only mean that the defendant did not take the stand and testify in his own behalf. We cannot agree with this conclusion of the appellant. We must consider the language used by the Solicitor in his argument in connection with what he had said both before and after the questioned statements. We do not think that it is reasonable to conclude that the argument of the Solicitor conveyed to the minds of the jurors the fact that the appellant had not testified in this case. We think that if, by any chance, a juror received such an impression, its effect was removed by the charge of the able and experienced Trial Judge, as follows:

"* * * A defendant is under no obligation whatsoever to testify in his own behalf and the fact that a defendant does not testify cannot and must not be considered against him under any circumstances or any manner whatsoever. The failure of a defendant to take the witness stand and testify in his own behalf does not raise any presumption or inference against him. On the contrary, all presumptions are in favor of his innocence and you must not permit his silence to weigh in the slightest degree against him."

The appellant asserts that the Solicitor first commented upon his failure to testify when he argued, with reference to the appellant, that "He got out there and left this man,

Dave Zeigler. Is that contradicted or denied?" Dave Zeigler had so testified, and the record shows that Jimmy Glover and Cudney Haynes were present. They could have testified and contradicted this statement if it were not true. It thus appears that the appellant was not the only person that could have denied this evidence.

In 68 A. L. R. at page 1135, it is said: "However, if the evidence of the State could have been denied only by the defendant, or if the remarks of the prosecutor could have only referred to the defendant, it is held that, under these circumstances, the remark that certain evidence is uncontradicted or undenied, is a reference to the failure of the defendant to testify and improper." 53 Am. Jur., Trial, Section 472. In *Patton v. State,* 105 Tex. Crim. R. 128, 287 S. W. 51, a rape case, the Court held that the argument of the prosecuting attorney that the testimony of the prosecutrix stood uncontradicted, was not a comment on the failure of the defendant to testify where a witness was present during some of the alleged acts of intercourse, and was available to the defendant to contradict the prosecutrix. Here, the remarks of the Solicitor could have applied to evidence other than that of the appellant, that might have been introduced on his behalf, going to show that he did not leave the car of Dave Zeigler at the place testified to by such witness.

It is recalled that Dr. Borgstedt, a witness in behalf of the State, testified that he made a microsopic examination of the material found within the vagina of the prosecutrix. and that such examination showed the presence of male spermatozoa, which indicated that unquestionably she had had sexual intercourse. The Solicitor, in his argument, commented that this evidence was not disputed or denied. This certainly could have had no reference to the failure of the appellant to testify in his own behalf. When the Solicitor argued that the State had only brought to the jury "unquestioned facts", this certainly was not a reference to the failure of the appellant to testify. There was no error on

the part of the Trial Judge in refusing to grant a new trial on the ground that the Solicitor had commented on the failure of the appellant to testify.

The next question for determination is whether the Trial Judge committed error in allowing the Solicitor to interrupt and make objection to the argument being made by counsel for the appellant. Counsel for the appellant insists that the objections made by the Solicitor harassed him in his argument to the jury.

We have held in numerous cases that counsel, in addressing the jury, in a criminal case, should keep themselves strictly within the record. This rule is essential and must be enforced. *State v. Cannon, supra,* and *State v. McDonald,* 184 S. C. 290, 192 S. E. 365. The conduct of a trial with reference to an argument is left largely to the discretion of the Trial Judge and this Court will not interfere unless it clearly appears that the rights of the complaining party were abused or prejudiced in some way.

Counsel for the appellant, during the course of his argument, stated, "What about the *Fred Livingston case?*" Thereupon the Solicitor objected and the Court ruled that he didn't think counsel should go into that case. Apparently, counsel was referring to the retrial of a case which had been reversed and remanded for a new trial by this Court. *State v. Livingston,* 233 S. C. 400, 105 S. E. (2d) 73. We think, and counsel for the appellant now admits, that the Trial Judge was correct in refusing to permit any argument about, or reference to, the *Fred Livingston case.*

Counsel for the appellant also made reference, in his argument to the jury, to the fact that the life of the appellant should be saved because he would never have the opportunity of being paroled. The Solicitor objected to this argument and he was sustained by the Trial Judge. Counsel for the appellant now admits, and we agree, that no error was committed by the Trial Judge in sustaining the Solicitor's ob-

jection to this line of argument. Cf. *State v. Hinton, et al.,* 210 S. C. 480, 43 S. E. (2d) 360.

Counsel for the appellant argued to the jury, "By and large, capital punishment is a punishment reserved for the poor, ignorant and friendless. Rarely do you see a man of means executed." The Solicitor objected to this argument and the Court overruled such objection, stating, "I don't see anything improper about the argument. The matter for the jury is how they regard the evidence."

And again, this same counsel said to the jury, "In the May issue of Readers Digest, Ernest Havemann writes an article entiled 'Capital Punishment is not * * * '." The Solicitor objected on the ground that counsel was reading to the jury and that what he was reading was not in evidence, to which the Court responded, "I haven't heard him read anything."

At another point in the argument of counsel for the appellant, he said, "Now if Charlie Robinson was a white man, I can feel sure that you would recommend mercy in this case, since the victim was not killed." The Solicitor objected to this argument. The Trial Judge apparently made no ruling.

If the Solicitor conceived that counsel for the appellant was making an argument to the jury that was improper for any reason, it was his duty to object to such argument, and, in so doing, he was within his rights, and it was not error on the part of the Trial Judge in permitting the Solicitor to exercise that which the law gives him a right to do. In two of the instances, the Trial Judge made a ruling favorable to the position of the appellant, and made no ruling as to the third objection. We cannot see where counsel for the appellant was harassed by the Solicitor. This objection is overruled.

The next question for determination is whether or not the Trial Judge committed prejudicial error in conducting the preliminary examination, in the presence of the jury,

as to the voluntariness of an alleged confession made by the appellant, which the State thereafter did not offer in evidence.

It appears that the State placed upon the witness stand C. L. McKinnon, who testified that the appellant was questioned at the headquarters of the South Carolina Law Enforcement Division. He testified that the appellant made a confession, which was free and voluntary; that it was not influenced by compulsion, force, hope of reward, fear, or other inducement of any kind. The statement made by the appellant was reduced to writing and signed by him. This witness was fully and vigorously cross-examined by counsel for the appellant, and was asked, "Well, what was the object of questioning him if you were not trying to get him to admit it, Mr. McKinnon?", to which the witness answered, "Well, he admitted it before the six hours were up. He was only talked to about thirty minutes and then it took time to get the statement." Counsel for the appellant objected to the admission of the statement on the ground that the confession was not voluntary, and the Court ruled, "I think it is a question for the jury as to whether or not the confession was voluntarily made." Thereafter, after further direct and cross-examination, the statement was marked for identification. At the close of all the testimony for the State, the Solicitor stated, "since counsel for the defense has objected to the proposed statement, we would like to withdraw it." The Court immediately instructed the jury, as follows:

"Now, gentlemen, in that connection, there was testimony about a statement of the defendant being taken down in writing and signed by him. The admission of that statement in evidence was objected to. I did not pass on the objection. It involved a legal question. I did have the statement marked for identification and reserved the question as to its admissibility. Now I am relieved of the necessity of passing on the legal question because the State does not insist on its admission. However, it is my duty, Gentlemen, to admonish you that you must completely disregard the testimony rel-

ative to such statement. It is not evidence in the case and it is not for you to consider. It would be highly improper for you to conjecture or speculate about what the statement might contain. You should simply dismiss it from your minds. While I am on that subject, Gentlemen, I want to call your attention to a question asked of the witness, Lt. McKinnon, and the answer that he gave, and I want to give you certain instructions about that along the same line as I· have given you concerning the statement. During the examination Mr. Hughes was questioning the witness about the period of time that the defendant was examined on Monday afternoon, as I recall, and in the course of it, he said, 'What was the object of questioning him if you were not trying to get him to admit it.' The witness answered, 'He admitted it before the six hours were up. He was talked to about thirty minutes and then it took time to get the statement.' Now, gentlemen, I instruct you that the statement of the witness 'He admitted it before the six hours were up' was an entirely inadvertent statement. Furthermore, the prosecution, the State stipulates that it was an inaccurate statement. The witness, if he had thought about it, would not have said he admitted it. The State stipulates that no such admission occurred. Therefore, gentlemen, you must, of course, lay that entirely aside in your consideration of the evidence and give no weight whatever to the statement of the witness that the defendant admitted it."

A confession is not admissible unless it is voluntary, and there is no presumption of law that it is voluntary. It necessarily follows that the burden rests upon the State to show that it was voluntary. The question of whether a confession is voluntary is one which is addressed to the Court in the first instance. If there is an issue of fact as to voluntariness of a confession, it should be admitted and the jury, under proper instructions, allowed to make the ultimate determination as to its voluntary character and also its truthfulness. *State v. Bullock,* 235 S.. C. 356,

111 S. E. (2d) 657, and *State v. Chasteen,* 228 S. C. 88, 88 S. E. (2d) 880.

In *State v. Chasteen, supra,* it was said:

"The better practice is for the trial Judge to conduct the preliminary inquiry and determine the admissibility of the confession in the absence of the jury. 20 Am. Jur., Evidence, Section 534; Annotation 148 A. L. R., beginning on page 546. There is authority to the effect that where this is not done and the Court thereafter determines the confession to be inadmissible, prejudicial error results. The question is not now presented and we intimate no opinion thereabout. * * *"

We should point out that the appellant at no time objected to the preliminary examination of the witness, Mc-Kinnon, in the presence of the jury as to the voluntariness of the confession; nor did the appellant move for a mistrial when the Solicitor announced that he would withdraw the statement because of objection thereto by him. The only objection as made by the appellant was that the confession was involuntary. We should also point out that the Trial Judge tentatively ruled that it was a question for the jury as to whether or not the confession was voluntarily made. The Trial Judge never, at any time, determined that the confession was inadmissible. We have held that if the Trial Judge, after the preliminary examination, determines that the confession was voluntarily made, his failure to conduct such examination in the absence of the jury is not ordinarily regarded as reversible error. *State v. Britt et al,,* 235 S. C. 395, 111 S. E. (2d) 669. A review of the evidence with reference to the voluntariness of the confession of the appellant convinces us that there would have been no error on the part of the Trial Judge if he had determined that the confession was admissible in evidence. Undoubtedly he would have admitted the confession in evidence if the Solicitor had not withdrawn the proffered confession. What prejudice resulted to the appellant by the withdrawal of the alleged confession from the evidence? What the appellant said in the

alleged confession was not revealed, and the Trial Judge, very properly, instructed the jury to completely disregard the testimony relative to the statement. In *State v. Collins,* 15 S. C. 373, it appears that the appellant was convicted of murder. It was held that where testimony in a criminal case is withdrawn by the State's attorney, upon the objection of the defendant, it is as if the testimony had not been admitted.

In the case of *State v. Green,* 121 S. C. 230, 114 S. E. 317, 318, the defendant was convicted of attempted rape. On the trial of the case evidence was admitted as to the fact that the defendant was required to take off his shoes and put his foot in a track. Thereafter, it was testified that the foot of the appellant fitted the track. The Trial Judge first admitted this testimony as to the tracks over the objection of the defendant, but later he concluded that he had made a mistake as to the admission of the evidence as to the tracks, and carefully instructed the jury to disregard such evidence. In refusing to grant a new trial, this Court said:

"The first allegation of error we will consider is as to the evidence in reference to the tracks. It is unprofitable to consider the effect of striking out incompetent evidence. The rule is too clear to require the citation of authority that the error in admitting incompetent testimony is cured by a clear statement by the trial Judge, and instruction to the jury to disregard the incompetent evidence. The exception that raises this question is overruled."

In *State v. Brown,* 212 S. C. 237, 47 S. E. (2d) 521, it appears that a written statement of a codefendant of the appellant had been offered in evidence in the trial of this case. When the testimony of the State was concluded, the Court, of its own motion, ordered the written statement stricken from the record because it had not been connected up by other testimony. During the charge, the Court instructed the jury that any statement made by the appellant's codefendants could not be considered at all since these de-

fendants had been eliminated from the case. This Court held that any error on the part of the Trial Judge was cured when the testimony complained of was stricken from the record and the jury instructed to disregard it.

In *State v. Britt et al., supra* [235 S. C. 395, 111 S. E. (2d) 684], this Court said:

"* * * We have also held that any error on the part of the trial Judge in admitting incompetent testimony is cured when the testimony complained of is stricken from the record, or an objection thereto is sustained, and the jury instructed to disregard it. *State v. Green,* 121 S. C. 230, 113 S. E. 317, and *State v. Singleton, supra.* We have also held that where the objectionable nature of testimony is brought to the attention of the trial Judge and he strikes it out and instructs the jury to disregard it, this cures the error in the absence of a motion by the defendant for a mistrial. *State v. Warren,* 207 S. C. 126, 35 S. E. (2d) 38. * * *"

Where a motion is made for a new trial on the ground that incompetent and irrelevant testimony has been admitted, and afterwards stricken out, with proper instructions from the Court to the jury to disregard it, a new trial will not necessarily be granted. The character of the testimony, the circumstances under which it was offered and admitted, the nature of the case being tried, the other testimony in the case, and, perhaps other matters, should be considered by the Court in deciding whether the party against whom such testimony was admitted, was so prejudiced thereby as to call for the exercise of the discretion of the Court to grant a new trial. In such cases, much must necessarily be left to the wise discretion of the trial Judge, who is in the atmosphere of the trial and is, therefore, most capable of correctly deciding the question; this Court should not interfere, unless it is made to appear that the ruling was manifestly erroneous. *State v. Singleton,* 167 S. C. 543, 166 S. E. 725. *Cable Piano Co. v. Southern Railway Co.,* 94 S. C. 143, 77 S. E. 868.

There was testimony in this case, without any consideration being given to the testimony about an alleged confession, upon which a conviction could have been found. This is the "other testimony in the case". It is reasonable to suppose that the jury found its verdict upon this other testimony admittedly sufficient to warrant a conviction, after the trial Judge instructed them to disregard all the testimony with reference to the alleged confession. It is readily apparent from the argument of one of the counsel for the appellant, as is hereinbefore quoted, that he practically admitted the guilt of the appellant and only asked that a recommendation of mercy be made so as to save the life of Charlie Robinson.

A careful review of the evidence in this case leaves no doubt as to the guilt of the appellant. The medical evidence shows, beyond any possible doubt, that the prosecutrix had been subjected to sexual intercourse; her vagina was torn and lacerated, and semen discovered in the vaginal tract. She positively identified the appellant as her assailant. We can find no prejudice to the appellant by reason of the testimony relating to his alleged confession, since the same was withdrawn from the evidence and the jury fully instructed to completely disregard the testimony relative thereto.

What we have heretofore said disposes of all the questions raised by the appellant, but in keeping with our invariable rule of *in favorem vitae,* we have carefully examined the record for any errors affecting the subtantial rights of the appellant, even though not made a ground of appeal. We find no such errors.

It is appropriate to state that counsel appearing for the appellant were appointed by the Court. They have with commendable zeal and ability appeared and represented the appellant. This Court acknowledges with appreciation their services.

The judgment of the lower Court is affirmed.

TAYLOR, C. J., and OXNER and LEGGE, JJ., concur.