19212

The STATE, Respondent, v. Atlas KEY and Robert Tobias Thomas, Appellants.

(180 S. E. (2d) 888)

*Messrs. Cleve A. Lytle, Richard C. Lewis,* and *David Lyle, for Appellants,*

*Messrs. Daniel R. McLeod, Atty. Gen., Hubbard W. Mc-Donald, Jr., Asst. Atty. Gen.,* of Columbia, and *Mike S. Jolly, Esq., Solicitor,* of Union, *for Respondent,*

April 29, 1971.

LITTLEJOHN, Justice:

Atlas Key and Robert Tobias Thomas were convicted of armed robbery at the July 1969 term of the Court of General Sessions for York County. A motion for a new trial was overruled. They have appealed to this court alleging error on the part of the trial judge in denying the motion.

By appropriate exceptions the two appellants allege error on the part of the judge in admitting certain testimony of

Alvin Dean Bennett concerning defendant Key's mother, in directing witness Bennett to repeat an answer "slowly, clearly, and distinctly", and in failing to exclude a portion of the solicitor's argument to the jury.

On April 9, 1967, in the nighttime, two men robbed the Handy Pantry Store of $313. Both were wearing stockings over the face and each had a pistol. In the store at the time were assistant manager Darrell Leon Walters, Alvin Dean Bennett and Mrs. Kay Kiker, all of whom testified for the State at the trial. The masked gunmen departed the store; there can be no question but that an armed robbery took place. The principal issue in the trial of the case was the matter of identity.

While Bennett was testifying on direct examination the solicitor asked about a conversation which he had with the mother of the defendant Key. Over objection of counsel he was permitted to testify that Key's mother told him that "Atlas said he was going to take half of Rock Hill with him if he was sent off and it would be best for me to just leave town on Sunday." The record reflects that the judge told the witness to repeat the answer "slowly, and clearly and distinctly." Bennett also testified that he had received some other telephone calls.

Both appellants argue prejudicial error by reason of the fact that the judge asked the witness to answer slowly, clearly and distinctly. At most the objections could relate only to the case against Key.

The next alleged error concerns jury argument. When the case was argued before the jury the exact words of the solicitor were not recorded, but the following is a part of the record:

"The Reporter: Argument of counsel was not taken down by me, however, Mr. Lytle objected during the Solicitor's argument to the jury concerning a statement made by the Solicitor to the effect that he wouldn't give a plug nickel for

Bennett's life if the defendants were turned loose. The objection was overruled by the Court."

We agree that the court erred in permitting Bennett to testify about his conversation with Key's mother, and in permitting the solicitor's argument to the jury. We are not convinced that the judge's direction to the witness to testify slowly, clearly and distinctly was error; but for all the record shows, his instructions may have been given because the witness was testifying rapidly and indistinctly.

We affirm because we are not convinced that the errors prejudiced the defendants. It is well settled in this State that "where guilt is conclusively proven by competent evidence and no rational conclusion can be reached other than the defendants are guilty, judgment of conviction should not be set aside because of insubstantial errors not affecting the result. *State v. Robinson,* 238 S. C. 140, 119 S. E. (2d) 671." *State v. Harvey,* 253 S. C. 328, 170 S. E. (2d) 657 (1969).

"Whether the error in a given case shall be regarded as harmless on appeal may often depend on the circumstances of the particular case rather than on any definite rules of law, the materiality and prejudicial character of the alleged error being determined in its relation to the entire case. Accordingly, the appellate courts are disposed to regard as harmless intervening errors where it appears from the record that the conviction is clealy correct on the merits; where it appears on the whole case that substantial justice has been done; where the record shows that accused had a fair trial; where the record conclusively shows that the alleged error could not have resulted in prejudice; where from the whole record the guilt of accused appears to be clearly established; where no other verdict could have been returned on the evidence, and where the conviction was just and would have been reached if the errors had not been committed. So, also, where it can be said from the record that the errors complained of could not reasonably have affected the result of the trial, they may be re-

garded as harmless, and this particularly where proof of accused's guilt is clear." 24A C. J. S. Criminal Law § 1887 (1962).

The admissibility of evidence as well as the argument of counsel to the jury are largely within the discretion of the trial judge. While it would appear that the objection to the evidence and the objection to the argument should have been sustained, we must, as we consider the prejudice issue, bear in mind that this court did not hear what took place while the trial judge did. The trial judge sees what is done and hears what is said. He is cognizant of all the surrounding circumstances and is a better judge of the latitude that ought to be allowed counsel in the submission of evidence and in arguments to counsel in a particular case than is this court. It is only in cases of abuse of discretion which result in prejudice that this court will intervene and grant a new trial. *State v. Thompson,* N. C., 179 S. E. (2d) 315, and *State v. Barefoot,* 241 N. C. 650, 86 S. E. (2d) 424.

We have held that where counsel wishes to object to argument of his adversary to the jury and preserve the objection for appeal, the proper procedure is to have the court reporter make a record of the matter objected to. It would be helpful if enough of the argument is recorded to indicate the context in which the contested statements are made. In this case we do not have before us the exact full statement of the solicitor, but the trial judge heard what was said and heard the argument which preceded the alleged impropriety and what followed it. He was in a better position to judge the prejudice or lack of it than is this court.

We now review the evidence for the purpose of determining whether guilt, and more specifically identity, was conclusively proved by competent evidence such as to eliminate the necessity of a new trial. The adequacy of the evidence to convict is not challenged. The defendants elected not to testify and did not submit any evidence. Our review is

therefore of necessity confined to the evidence submitted by the State.

Witness Bennett was in the store when the robbery occurred. He had been acquainted with Key some ten or twelve years. He did not know the defendant Thomas, whom he described as being heavyset and short.

About a month after the holdup Bennett testified that he saw Key at the Dixie Tavern in Rock Hill. He quoted Key as asking "wasn't you in the Handy Pantry here awhile back when it got robbed?" He replied, "Yeah, and I believe I recognized you while you was in there—you were the one that had a big gun hiding your face." He said that Key "just laughed and told me not to tell nobody about it."

Bennett further testified:

"Q. At that time, I'll ask you this, did you recognize Atlas Key as being one of the men you had seen in the Handy Pantry on the night alleged?

"A. Yes, sir.

"Q. And are you positive of your identification?

"A. Yes, sir.

"Q. Is there any doubt in your mind?

"A. No, sir."

Bennett admitted that he had some difficulty with Key previously. He testified that he "realized that it was him when he kept hiding but I just didn't want to say nothing about it." The night of the robbery he told police officers he did not know who it was. Apparently he did not want to get involved. When Bennett and Key were discussing the matter at the Dixie Tavern, Key did not admit participating in the robbery, but did not deny it.

Darrell Leon Walters was assistant manager in charge of the store. He testified relative to the robbery and said that he went to the jail after the defendants were arrested. He had heard Thomas talk on the night of the robbery and identified him at the jail by his voice. Both he and one

other witness testified that the voice was unusual. Relative thereto Walters testified:

"Q. Alright. I'll ask you this, is that an opinion or is that a positive identification?

"A. When I came out of the cell I told Lt. Burrell, I said 'I know that voice' I said 'I'm positive that's the man that was in my store that night', even though I didn't know who the man was."

He further testified that the build of the man in jail was about the same as the man with the unusual voice in the store.

Mrs. Kay Kiker was also in the store the night of the robbery, doing some shopping. She told the court about the robbery and identified the defendant Thomas. She was questioned by the solicitor:

"Q. Have you seen either one of them since?

"A. Yes.

"Q. And who? Do you see that person in the courtroom?

"A. Yes.

"Q. Would you point him out please, ma'm?

"A. He is the man sitting beside of the one with the blue shirt, the one in the coat there.

"Q. The one in the coat?

"A. Yes, on the back row.

"Q. Back row?

"A. Yes.

"Q. I ask you if this is the man who held the gun in your face?

"A. I would stake my life on it."

Her identification of Thomas was positive.

Lt. L. D. Burrell of the Rock Hill city police department testified for the State. He said that he had known both of the defendants for several years; he saw them together on many occasions. He testified that the police force kept them under constant surveillance during the course of their investigation, and found them constantly together. After they were

arrested he went to the cell with Mr. Walters, and testified that Walters promptly and positively identified Thomas as having the voice of the man who robbed him.

As indicated hereinabove, the matter of identity was the only real issue involved in the trial of the case.

The jury had before it positive identifications of each of the defendants. Such identifications were not denied. It is academic that failure of the defendants to testify created no inference of guilt against them. They did not have the burden of proving anything. However, undisputed testimony is more conclusive than testimony which is in dispute, and it is less difficult for this court to reason that guilt is conclusively proven when there is no denial, than when an accused person disputes the truthfulness of the State's evidence.

After the verdict of guilty was returned by the jury the record reflects "at this time the defendant Bo Thomas started throwing chairs, with the defendant Atlas Key joining in and shouting obscenities."

The record further reflects that the court proceeding was completely disrupted and that the defendants had to be subdued before order was restored to the courtroom. The record further reflects that the defendant Key castigated the judge and the law enforcement officers with many obscenities. The defendants have not been dealt with as for contempt, and this opinion deals solely with the charge of armed robbery. No opinion is expressed relative to appropriate action incident to the conduct of the defendants after the verdict was returned. It is not inappropriate to comment that the trial judge handled a difficult situation with commendable skill.

The judgment of the lower court is

Affirmed.

Moss, C. J., and Lewis, J., concur.

Bussey and Brailsford, JJ., dissent.

Brailsford, Justice (dissenting):

The salutary rule invoked in affirming these convictions, despite acknowledge trial errors, is settled law, with which I am in full accord. However, I am convinced that this record falls far short of that conclusive proof of guilt, excluding any other rational verdict, upon which, alone, the rule operates. The conviction of the defendant Key rests upon the testimony of one Bennett who witnessed the robbery. The two men had known each other for many years and had had recurrent difficulties. The robbers wore stockings over their heads, and Bennett told the investigating officers that he did not recognize either of them. It was not until some thirty days later, during a conversation with Key, that Bennett mentally identified him as a participant. Bennett reported this conclusion to the police some two weeks later, and the arrests followed.

The case against Thomas rests upon the testimony of two eyewitnesses. A Mrs. Kiker testified that she recognized him as one of the robbers when he "strolled into the courtroom" on the day of the trial, although he was a stranger and she had not seen him between the night of the robbery and his appearance in court. The store operator testified that he recognized Thomas' voice as that of one of the robbers when, some forty days after the event, he was taken to a jail cell for the purpose of attempting this identification.

The record indicates that both defendants are flagrant and confirmed criminals, but it furnishes no competent evidence of their guilt of the offense charged except that recited above. While admittedly sufficient to raise an issue for the jury, its sufficiency to establish guilt beyond a reasonable doubt is plainly arguable.

Bussey, J., concurs.