536 S.E.2d 91

**The STATE, Respondent,**

v.

**Tony Tjuan SWEET, Appellant.**

**No. 3232.**

Court of Appeals of South Carolina.

Heard April 11, 2000.

Decided July 31, 2000.

344

Regan A. Pendleton, of Greenville, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Attorney General Toyya Brawley Gray, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for respondent.

CONNOR, Judge:

A jury found Tony Tjuan Sweet guilty of first degree burglary and grand larceny. The trial court sentenced him to

fifteen years and ten concurrent years respectively. Sweet appeals. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

During the late evening of January 1, 1998, or early morning hours of January 2, 1998, someone broke into Andrew and Robin Caroll's home, removing thousands of dollars worth of personal property. The Carolls provided police with a list of items taken from the home. Items taken from the home included a TV, a VCR, a CD player, a flute, a jewelry box, a cellular telephone, and two rings. Officers recovered a CD player, a pearl flute, and a ring with several diamond stones from local pawn shops. Angela Holliday pawned the flute and ring. Tina Verba pawned the CD player. When questioned by an investigator, Holliday and Verba confessed to the burglary and implicated Sweet.

The Greenville County Grand Jury subsequently indicted Sweet on charges of first degree burglary and grand larceny. At Sweet's trial, Holliday and Verba testified they, along with Sweet, burglarized the Carolls' home. They explained Sweet entered the home through a window and then opened the door. They also claimed the three made several trips to the home. Verba testified that between trips Sweet called the home using the cellular telephone to ensure no one was home before returning for another trip. In addition to the items pawned by Verba and Holliday, the State introduced evidence Sweet pawned a one-half karat marquise cut diamond ring on January 4. However, the State offered no evidence that the ring Sweet pawned matched any ring taken from the Carolls' home. According to Verba and Holliday, they and Sweet used the money from the pawn shops to buy drugs and alcohol.

Sweet did not testify or call witnesses. The jury convicted him of first degree burglary and grand larceny.

## DISCUSSION

Although Sweet raises three separate arguments, he primarily asserts the solicitor's closing argument shifted the burden of proof from the State to the defense by impermissibly commenting on his failure to testify. Thus, he maintains the trial court abused its discretion in denying his motion for a mistrial.

The challenged portion of the State's closing argument is as follows:

Common sense would tell you that when you have two people that were there, nobody else knows what happened that night except Tony Sweet and those two girls. Those girls came in, they confessed, I mean, their testimony is now of record. There is no way on earth for them to back out of the fact that they are guilty of these crimes. They have confessed to you, to the Court, to everybody. And as part of their confession they told you that Tony Sweet was there. Part of that statement has been corroborated. They told you about the cell phone calls, we got the cell phone statements in. They told you the fact that Tony got jewelry, we got jewelry that Tony pawned two days after the burglary. *There isn't any **testimony** that conflicts with those statements.*

(Emphasis added).

Immediately following this comment, Sweet's counsel objected, stating, "Your Honor, may we please regarding that comment?" The judge did not rule on the objection, but simply responded, "I note your objection." Counsel then asked the court to also note the "appropriate motion." The judge then charged the jury before allowing Sweet to more formally present his objection and motion.

Subsequently, the judge stated on the record that he wanted to protect Sweet's counsel concerning his motion. The judge recognized that Sweet's counsel was "going to argue the shifting of the burden of proof or a comment." Sweet's counsel then argued his objection and requested a mistrial on the ground the solicitor directly commented on Sweet's failure to testify. The judge refused to immediately rule on the motion until after the jury reached its verdict, making a mistrial an impossibility. *See Howell v. Davis,* 278 S.C. 510, 299 S.E.2d 336 (1983) (A mistrial cannot be granted after the jury reaches a verdict.).

Three days later, the judge held a hearing on the motion. Because the jury had returned a verdict, Sweet's counsel made a motion for a new trial on the same grounds asserted for the mistrial motion. The judge denied the motion. He found there was evidence that implicated Sweet, in particular letters that Holliday and Sweet had written to each other.

The judge concluded this evidence combined with his "strong" jury instruction which addressed a defendant's right not to testify was sufficient to cure any prejudice to Sweet.

■ As a threshold issue, we disagree with the State's contention that Sweet did not properly preserve this issue for appeal because Sweet failed to make a specific objection, because the motion for mistrial was not timely, and because the trial judge never ruled on the objection or motion for a mistrial. Sweet's counsel immediately objected to the solicitor's comment and attempted to move for a mistrial. Although he did not state a specific objection, it is clear from the trial judge's comments he was aware of the grounds for the objection. Moreover, the judge's failure to immediately rule on the objection and motion deprived Sweet of an opportunity to present argument about the comment before the jury began deliberations. Accordingly, we find the error is preserved. *See* Rule 103(a)(1), SCRE (a party's objection must be accompanied with a specific ground unless the specific ground is contextually apparent); *see also State v. Holliday,* 333 S.C. 332, 509 S.E.2d 280 (Ct.App.1998) (whether trial court erred in allowing solicitor to use defendant's post-arrest silence to impeach his testimony at trial was preserved for appellate review where trial court and attorneys discussed the issue and the trial court stated on the record that it understood defense counsel's objection); *cf. City of Columbia v. Myers,* 278 S.C. 288, 294 S.E.2d 787 (1982) (issue of improper closing argument was preserved for appellate review despite failure of defense counsel to request curative instruction, mistrial, or new trial after his objection had been overruled).

■ We now analyze the merits of Sweet's appeal. The appropriateness of a solicitor's closing argument is left largely to the trial court's sound discretion, including the decision of whether to grant a defendant's motion for mistrial. *State v. Copeland,* 321 S.C. 318, 468 S.E.2d 620 (1996). Ordinarily, a trial court's rulings on closing arguments will not be disturbed. *State v. Patterson,* 324 S.C. 5, 482 S.E.2d 760 (1997), *cert. denied, Patterson v. South Carolina,* 522 U.S. 853, 118 S.Ct. 146, 139 L.Ed.2d 92 (1997). Prosecutorial comment, whether direct or indirect, on the defendant's failure to testify is impermissible. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *State v. Cooper,* 334 S.C. 540, 514

S.E.2d 584 (1999). Where the solicitor refers to certain evidence as uncontradicted and the defendant is the only person who could contradict that particular evidence, the statement is viewed as a comment on the defendant's failure to testify. *State v. Robinson,* 238 S.C. 140, 119 S.E.2d 671 (1961), *overruled in part on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991) (abolishing *in favorem vitae* review).

■ In this case, the assistant solicitor stated only Sweet could rebut Verba and Holliday's testimony. Specifically, he told the jury "nobody else knows what happened that night except Tony Sweet and those two girls," and then stated "[t]here isn't any testimony that conflicts with [the statements of the two girls]." Clearly, the comment referenced Sweet's failure to testify and was not merely a comment on the evidence. *Cf. State v. Rouse,* 262 S.C. 581, 584–85, 206 S.E.2d 873, 874 (1974) (holding solicitor's closing argument statement, "As I stated earlier it is uncontradicted what happened in that store that day," did not constitute a comment on defendant's failure to testify, given appellant's defense was alibi and the comment did not state that it was uncontradicted as to appellant's participation in the events in question, but rather, simply referred to what actually took place); *Robinson,* 238 S.C. at 158–59, 119 S.E.2d at 680 (where solicitor's closing remarks could have applied to evidence other than that which might have been introduced on the defendant's behalf, trial judge did not err in refusing to grant defendant a new trial).

■ Having determined the solicitor's closing argument constituted an impermissible comment on Sweet's failure to testify, we must decide whether reversal of his conviction is warranted. Although it is improper for a solicitor to directly or indirectly comment on a defendant's failure to testify, such comments do not necessarily mandate reversal of a conviction. *Johnson v. State,* 325 S.C. 182, 480 S.E.2d 733 (1997). The appellant bears the burden of demonstrating the solicitor's words denied him a fair trial. *Id.* Furthermore, "any alleged impropriety must be examined on appeal in light of the entire record." *State v. Brown,* 333 S.C. 185, 191, 508 S.E.2d 38, 41 (Ct.App.1998). A criminal defendant is entitled to a fair trial, not a perfect one. *State v. Mizell,* 332 S.C. 273, 504 S.E.2d 338 (Ct.App.1998), *cert. denied* (Apr. 12, 1999).

 We believe Sweet demonstrated the assistant solicitor's comments deprived him of a fair trial. The State's case against Sweet was far from overwhelming. Although pawn tickets linked Verba and Holliday to the crime, the only evidence of Sweet's involvement was the contradictory testimony of the confessed burglars. For example, Holliday claimed she never went inside the Carolls' home, but remained outside as a lookout. Verba, however, testified all three entered the home and took property. Holliday and Verba's claim that a cellular telephone taken from the home was used to place calls to the home was corroborated by telephone records, but their testimony that Sweet placed the calls was not. The State also did not conclusively prove the diamond ring that Sweet pawned was the same item taken from the Carolls' home. Although Sweet wrote Holliday concerning an alibi, one of his letters appears to proclaim his innocence as do two letters Holliday wrote him. Given that the State's case was not particularly strong, we cannot find the assistant solicitor's comments harmless. *See Edmond v. State*, 341 S.C. 340, 346, 534 S.E.2d 682, 685 (2000) ("[T]he admission of comments or evidence of the defendant's exercise of a constitutional right is a 'trial error' subject to harmless error analysis."); *State v. Gaskins*, 284 S.C. 105, 326 S.E.2d 132 (1985) (the solicitor's comment, during closing argument, that certain evidence was undisputed because of the defendant's failure to testify was harmless error beyond a reasonable doubt in context of entire record and in light of overwhelming evidence of guilt), *cert. denied, Gaskins v. South Carolina*, 471 U.S. 1120, 105 S.Ct. 2368, 86 L.Ed.2d 266 (1985), *overruled in part on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991); *see also State v. Pickens*, 320 S.C. 528, 531, 466 S.E.2d 364, 366 (1996) (For the error to be harmless where a solicitor improperly comments on a defendant's failure to call witnesses, "the record must establish the reference to the defendant's right to silence was a single reference, which was not repeated or alluded to; the solicitor did not tie the defendant's silence directly to his exculpatory story; the exculpatory story was totally implausible; and the evidence of guilt was overwhelming.").

Furthermore, because the trial judge did not give an immediate curative instruction, this case is distinguishable from those cases where a curative instruction given in conjunction

with a general jury instruction was sufficient to cure the improper comment on a defendant's failure to testify. *See State v. Cooper,* 334 S.C. 540, 514 S.E.2d 584 (1999) (even if solicitor's closing comments referred to defendant's failure to testify or present a defense, any prejudice to defendant was cured when trial judge gave a curative instruction immediately following defense counsel's objection and charged the jury after closing arguments that defendant did not have the burden of proving his innocence and the jury could not consider defendant's failure to testify); *see also State v. Plath,* 281 S.C. 1, 313 S.E.2d 619 (1984) (where solicitor in his closing argument referred to the fact that neither defendant would testify, any prejudice to defendants was cured when solicitor promptly apologized to the jury after defense counsel's objection and the trial judge instructed the jury concerning the right of a defendant to remain silent and the State's burden of proof), *cert. denied, Plath v. South Carolina,* 467 U.S. 1265, 104 S.Ct. 3560, 82 L.Ed.2d 862 (1984).

The State argues, however, the trial judge cured any error through its general jury charge that the jury could not consider Sweet's failure to testify against him. Although a general jury instruction has been held to cure comments which arguably addressed the defendant's failure to testify in other cases, we disagree that such a charge will always cure this type of violation or that it does so in this case.

We find the instant case distinguishable from cases where our Supreme Court has found a judge's general instruction to the jury sufficient to cure the error. In *Johnson v. State,* our Supreme Court considered a prosecutorial argument which arguably commented on the defendant's failure to testify. *Johnson v. State,* 325 S.C. 182, 480 S.E.2d 733 (1997). The Court concluded that the solicitor's comment actually constituted a statement on the evidence which was before the jury rather than a comment on the defendant's failure to testify. In reaching that conclusion, the Court noted the State's argument also specifically advised the jury it could not consider the defendant's failure to testify against him in any way. *Id.* at 187 n. 1, 480 S.E.2d at 735 n. 1. The Court went on to state that "even assuming *arguendo* the comment was improper, we find the trial court's instruction to the jury [at the close of the evidence] that it could not consider [the defendant's] failure to testify in any way and could not use it against him sufficient to

cure any potential error." *Id.* at 188, 480 S.E.2d at 735–36. *Johnson* is distinguishable from this case because here the challenged argument clearly placed an adverse inference before the jury. Moreover, where unlike in *Johnson* the defense raised no objection, the comment in this case was immediately objected to and allowed to stand uncorrected in the jury's presence, thereby allowing the jury to perceive it met with judicial approval.

In *State v. Irvin*, the appellants challenged a portion of the State's closing argument as a comment on their failure to testify. *State v. Irvin*, 270 S.C. 539, 243 S.E.2d 195 (1978). At trial, the defense immediately objected and moved for a mistrial.. The trial court denied the mistrial motion, but prevented the solicitor from continuing further in his argument. At the defense's request, the court did not issue a curative instruction. The Supreme Court found the statement improper, but cured by the court's general jury charge concerning the defendant's failure to testify, which was nearly identical to the one issued in this case. The Court went on to conclude the comment was "isolated, indirect, and at best a reference not to appellants' failure to testify but to the lack of any evidence contradicting the testimony introduced by the State," and the jury charge negated any potential adverse inference. *Id.* at 544, 243 S.E.2d at 197. *Irvin* is distinguishable from the case at bar for several reasons. First, the trial judge in *Irvin* sustained defense counsel's objection by preventing the solicitor from continuing further in his argument, thus, conveying to the jury the comment was improper. Secondly, *Irvin*'s counsel refused a curative instruction. Finally, there is a significant difference in the nature of the solicitors' comments in both cases. In *Irvin*, the solicitor's argument was an indirect comment. In contrast, the solicitor in Sweet's case directly commented on Sweet's failure to testify, specifically pointing out that only Sweet could contradict the statements of Verba and Holliday given they were the only individuals involved in the crime.

Other cases refuse to hold that improper jury argument can be cured by a general instruction in the court's charge to the jury where an immediate curative instruction was needed. In *State v. Pickens*, the solicitor impermissibly discussed the defendant's failure to present any witnesses. *State v. Pickens*, 320 S.C. 528, 466 S.E.2d 364 (1996). The trial court found the

comment improper, but refused to give a curative instruction because it did not want to amplify the error. On review, our Supreme Court found the trial court erred by refusing to cure the problem and held its general charge, given a short time later, did not cure it. In *Huckaby v. State*, the Tennessee Court of Criminal Appeals concluded the prosecutor's comment to the jury on the defendant's failure to testify might have been cured by an immediate admonishment, but that it could not be cured by "the court's standard charge on the presumption of innocence and the defendant's right to testify or not as he might choose." *Huckaby v. State*, 3 Tenn.Crim. App. 84, 457 S.W.2d 872, 874 (1970).

The assistant solicitor's comment on Sweet's failure to testify should have been immediately addressed upon his objection either by the judge granting a mistrial or issuing a curative instruction. Because the evidence in this case is less than overwhelming, we do not find the comment harmless. Furthermore, the court's general charge to the jury on Sweet's right not to testify was insufficient to cure the error.

Accordingly, for the reasons discussed above, Sweet's convictions for first degree burglary and grand larceny are

**REVERSED AND REMANDED.**

GOOLSBY and HOWARD, JJ., concur.