608 S.E.2d 140

**The STATE, Respondent,**

v.

**Nathaniel MITCHELL, Appellant.**

**No. 3918.**

Court of Appeals of South Carolina.

Heard Dec. 7, 2004.

Decided Jan. 10, 2005.

Rehearing Denied April 22, 2005.

Assistant Appellate Defender Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Warren Blair Giese, of Columbia, for Respondent.

ANDERSON, J.:

Nathaniel Mitchell (Mitchell) was found guilty of homicide by child abuse. Mitchell argues the circuit court should have charged involuntary manslaughter as a lesser included offense. We affirm.

### *FACTUAL/PROCEDURAL BACKGROUND*

Nathaniel and Sonya Mitchell were acting as foster parents for Hodari, Nautica, and Passion Gardner. While under the Mitchells' care, Passion, who was approximately two years and three months of age, died from severe head injuries. Mitchell was indicted and tried for homicide by child abuse under S.C.Code Ann. § 16-3-85.

At trial, numerous physicians testified for the State that Passion's injuries were not only consistent with, but a result of shaken baby syndrome. They further opined that trauma of that type and severity could not have been inflicted accidentally.

Passion arrived at the hospital alive, but in critical condition. Dr. Hubbird was called to assist the effort to resuscitate Passion. At trial, he described her condition:

A. ... [Her] eyes were widely dilated.... I saw hemorrhages, areas of bleeding into the retina on both eyes....

. . . .

... [T]he main thing that I was noticing, I came into the E.R., the child was in the emergency department in a bed intubated, not moving, and the pupils were widely dilated so neurologically I already knew the child was quite devastated.

. . . .

Q. Did the C.T. scan in fact confirm that the child had— when you say neurological, do you mean brain damage?

A. Brain damage, yes.

Q. And what did the C.T. scan show?

A. ... It showed what we call a subdural hematoma, meaning there's a collection of blood....

... It showed the subdural hematoma and it showed swelling of the brain itself.

... [T]here was so much swelling on the right side that the brain was pushed over against the left, there was some midline shift. Midline shift is very dangerous. Any swelling of the brain is dangerous, but midline shift in particular means that there's massive, massive swelling and that causes massive damage.

Dr. Hubbird then asseverated as to the likely cause of Passion's injuries:

A. My examination, with the subdural hematoma, with the retinal hemorrhages, and the abnormal neurological findings is the evidence of big time swelling and neurological deficit, that indicated child abuse. That's what causes it, that's what it is.

. . . .

A. This is—those three things together virtually is diagnostic, meaning it tells us what it is. They used to call it—and a lot of people still call it shaken baby syndrome.

Q. And when you say shaken baby syndrome, what type of trauma is inflicted on this child to cause these injuries?

A. Shaken baby syndrome is violent whiplash type shaking of an infant or small toddler. It has to be very violent. The human brain is meant to take a nice—you know, if you fall you might be a little dazed. We are meant to take a quick trauma to the brain, if it's just a one time deal, I mean, you wake up like that, and it doesn't usually cause a big problem.

But back and forth, sustained shaking and violent shaking, the brain is not meant to take that and it causes bleeding, retinal hemorrhages, and all that then causes the swelling of the brain.

Q. And Doctor, in your expert opinion—and you mentioned could a fall, say from even like a countertop or a bed or even from several feet, could that cause these types of injuries?

A. No. The only trauma that I know of, and I've never seen this, but from what's reported, that can cause anything even similar is a big time automobile accident, either head-on or side impact where the child is ejected from the car. And I guess it's a potential from a several story fall, but then you'd see associated other injuries as well.

. . . .

Q. Could a child cause these types of injuries, say a three year old?

A. No ma'am. A three year old wouldn't have the strength. Generally in head injuries, it's—a serious injury is caused by serious forces. Violent forces cause big injuries.

. . . .

Q. What about just—If I, as a grown person, were picking the child up in the air and its head goes back, could that cause these types of injuries? Could this be accidental in any way?

A. No this was not accidental.

Q. So taking a child and lifting it in the air or slightly shaking it wouldn't cause this?

A. No, this would be violent, violent shaking. . . .

Dr. Linda Christmann was qualified as an expert and explained the force necessary to sustain the injuries to Passion:

Q. . . . Doctor, the hemorrhages that you saw, could they have even been caused by falling down say a flight of stairs?

A. No they could not.

. . . .

Q. Doctor, in your opinion, could this have been an accidental shaking?

A. No.

Another expert, Dr. Close, corroborated the opinions of Drs. Hubbird and Christmann:

Q. And, Doctor, how would you characterize the type of shaking and/or trauma that would be necessary to inflict this on a two year old, three month child?

A. That would be brutal. I've seen children fall. Kids come to the hospital after falling out of shopping carts and things like that. You don't see bleeds from that kind of trauma. You see this bleed from bad car wrecks. You see it—when I was a resident, when a child that had fallen out of a window—a third floor window. It's significant trauma.

One physician testified for the defense that his examination of the child was inconclusive. He further stated the rebleeding of an existing head injury could have caused the death.

At trial, Mitchell averred that he discovered Passion and her brother, Hodari, playing in the toilet. He stopped them, spanked both with his belt, cleaned them up, and let them leave to play while he cleaned up the bathroom. Thereafter, Hodari directed Mitchell's attention to Passion, who was facedown in the hallway. The jury did not credit Nathaniel Mitchell's testimony and found him guilty. He was sentenced to twenty-five years imprisonment.

## *LAW/ANALYSIS*

## I. Involuntary Manslaughter Is Not a Lesser Included Offense

The circuit court declined to charge the jury on involuntary manslaughter. The court found (1) involuntary man-

slaughter is not a lesser included offense of the specific, statutorily defined crime of homicide by child abuse, and (2) the facts did not support involuntary manslaughter. The question of whether involuntary manslaughter is a lesser included offense of homicide by child abuse is a novel issue of law in South Carolina.

## A. Elements Test

 "The test for determining when an offense is a lesser included offense of another is whether the greater of the two offenses includes all the elements of the lesser offense." *State v. Elliott*, 346 S.C. 603, 606, 552 S.E.2d 727, 728 (2001); *accord Murdock v. State*, 308 S.C. 143, 144, 417 S.E.2d 543, 544 (1992). "If the lesser offense includes an element not included in the greater offense, then the lesser offense is not included in the greater." *Hope v. State*, 328 S.C. 78, 81, 492 S.E.2d 76, 78 (1997).

One commentator on South Carolina courts has written that in recent years our courts have "tended to parse the elements of offenses quite closely, often finding two offenses contain separate elements and therefore that one offense is not contained within the other." William Shepard McAninch & W. Gaston Fairey, *The Criminal Law of South Carolina* 51 (4th ed. 2002). An example is *Hope v. State*, 328 S.C. 78, 492 S.E.2d 76 (1997). In *Hope*, the court determined entering without breaking is not a lesser included offense of first degree burglary. The supreme court explained that first degree burglary is defined in part as entering a dwelling *without consent*, whereas the alleged lesser included offense involves entering *without breaking*. *Id.* at 81–82, 492 S.E.2d at 78–79.

In *Stevenson v. State*, 335 S.C. 193, 516 S.E.2d 434 (1999), the court determined resisting arrest is not a lesser included offense of assault and battery of a high and aggravated nature: "ABHAN requires proof of circumstances of aggravation which is not required for resisting arrest. Resisting arrest requires proof that the person assaulted is a law enforcement officer which is not an element of ABHAN." *Id.* at 200, 516 S.E.2d at 438. The *Stevenson* court addressed lesser included offenses to ascertain whether the double jeop-

ardy clause was violated by convicting the defendant on charges of ABHAN and resisting arrest. *Id.* at 198–200, 516 S.E.2d at 436–439. The court did this by relying on the "same elements" test created in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In this way, the elements test used to determine lesser included offenses apparently is an artifact of double jeopardy jurisprudence.

■ S.C.Code Ann. § 16–3–85 (2003) provides:

(A) A person is guilty of homicide by child abuse if the person:

(1) causes the death of a child under the age of eleven while committing child abuse or neglect, and the death occurs under circumstances manifesting an extreme indifference to human life.

Involuntary manslaughter is defined as: "(1) the unintentional killing of another without malice, but while engaged in an unlawful activity **not naturally tending to cause death or great bodily harm;** or (2) the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others." *State v. Reese,* 359 S.C. 260, 597 S.E.2d 169 (Ct.App.2004) (emphasis added) (citing *State v. Tyler,* 348 S.C. 526, 529, 560 S.E.2d 888, 889 (2002); *State v. Chatman,* 336 S.C. 149, 152, 519 S.E.2d 100, 101 (1999)).

Homicide by child abuse requires child abuse or neglect; therefore, Mitchell is compelled to argue that he would fit within the first prong of involuntary manslaughter, involving an unlawful activity, rather than the second, involving a lawful activity. Obligatorily, Mitchell is forced to show that engaging in an unlawful activity not naturally tending to cause death or great bodily harm is a lesser element of homicide by child abuse. Here, Mitchell fails.

The crime of homicide by child abuse only applies in cases where the decedent is under the age of eleven whereas the application of involuntary manslaughter is not affected by the age of the decedent. Moreover, homicide by child abuse involves child abuse or neglect; in contrariety, involuntary manslaughter exists based on a larger number of factual predicates. Indeed, Mitchell concedes in his brief that *"obviously involuntary manslaughter could not be a lesser-*

*included offense under the elements test*[.]" (Emphasis added). Apodictically, homicide by child abuse does not include all the elements of involuntary manslaughter. The elements test is not met. *See also State v. Elliott*, 346 S.C. 603, 611, 552 S.E.2d 727, 731 (2001) (Pleicones, J., dissenting) (observing that the legislature has created several statutory forms of homicide, including homicide by child abuse, which "are not lesser included offenses of **common law** murder charge because they cannot meet the 'elements test' applied when the greater-lesser question involves a common law/statutory combination.") (emphasis in original).

Our arbitrament that involuntary manslaughter is not a lesser included offense of homicide by child abuse is not exclusively an application of the strict elements test. The decision to create the crime of homicide by child abuse displays the legislature's intent to define and target a specific societal problem. *See generally People v. Payne*, 90 Mich. App. 713, 282 N.W.2d 456 (1979) (refusing to find "assault with intent to do great bodily harm less than murder" a lesser included offense of criminal sexual conduct because sexual assault is a particularly heinous form of assault and the prohibition of these crimes serves different societal interests). Legislatively, the entirely new crime of homicide by child abuse was created instead of opting to enhance the punishment for involuntary manslaughter. In fact, a purpose given for enactment of the statute was the "creat[ion of] the felony criminal offense" of homicide by child abuse. 1992 S.C. Acts 412.

### B. Historical Antecedent Test/*Elliott*

The utilitarian efficacy of the elements test has been limited by our supreme court. In *State v. Elliott*, 346 S.C. 603, 552 S.E.2d 727 (2001), the court deviated from the strict elements test and determined that assault and battery of a high and aggravated nature (ABHAN) is a lesser included offense of assault with intent to commit criminal sexual conduct (ACSC). In this academic and erudite endeavor titled "an anomaly in the law," our supreme court retrocedes from the elements test:

> To the extent that the elements of ABHAN and ACSC do not meet the elements test, we recognize this situation

presents an anomaly in the law, akin to manslaughter and murder. The common law does not always fit into the neat categories we might prefer. Nevertheless, we find compelling reasons not to abandon our longstanding inclusion of ABHAN as a lesser included offense of attempted sexual battery crimes.

> *.... We recognize this holding deviates from the strict elements test, yet decline to overrule our many cases leading to this result. Despite the existence of a few anomalies, we reiterate our commitment to the elements test. We will continue to consider offenses on a case-by-case basis, beginning with the elements test.*

*Elliott,* 346 S.C. at 607–08, 552 S.E.2d at 729–30 (emphasis added). The court rooted its decision in the historical fact that ABHAN was a lesser included charge of the precedent crime of assault with intent to ravish. *Id.* at 606–07, 552 S.E.2d at 729.

Subsequently, in *State v. Watson,* 349 S.C. 372, 563 S.E.2d 336 (2002), our supreme court declined an invitation to deviate from the elements test on the question of whether reckless homicide was a lesser included offense of murder. Although the court had previously stated—in *dictum*—that reckless homicide was a lesser included offense of murder, the *Watson* court held: "Despite the . . . *dictum* in *State v. Reid,* [324 S.C. 74, 476 S.E.2d 695 (1996)], this Court has never held that reckless homicide is a lesser included offense of murder. We decline to do so. We instead adhere to the result dictated by the elements test for lesser included offenses. . . ." *Id.* at 377, 563 S.E.2d at 338.

In the case *sub judice,* there is no historical antecedent that suggests involuntary manslaughter is a lesser included offense of homicide by child abuse. Homicide by child abuse is a crime of relatively recent legislatorial vintage, the statute having been promulgated in 1992. *See* 1992 S.C. Acts 412. In departing from the elements test, the *Elliott* court recounted that it had "consistently incorporated ABHAN into the CSC framework as a lesser included offense of ACSC" and cited a number of cases in which it had done so. *Elliott* at 607, 552 S.E.2d at 729. Contrastively, our courts have never held or

suggested that involuntary manslaughter is a lesser included offense of homicide by child abuse.

Furthermore, *Elliott* involved the lesser crime of ABHAN as it relates to ACSC. The predecessor crime to ACSC was assault with intent to ravish. The *Elliott* court cited *State v. Stewart*, 283 S.C. 104, 109, 320 S.E.2d 447, 450–51 (1984), which explicates: "The statutes dealing with rape and assault with intent to ravish were repealed by Act. No. 157 of the 1977 Acts and Joint Resolutions of the General Assembly. In the same act, the crime of criminal sexual conduct was established." *Elliott*, 346 S.C. at 607, 552 S.E.2d at 729. Here, there is no predecessor crime to homicide by child abuse. No statutes were repealed in its promulgation; it takes its place amid the laws and jurisprudence of this State on a *tabula rasa*. Because there is no predecessor crime which homicide by child abuse supersedes, there is no longstanding tradition from which to justify a departure from the elements test.

Finally, *State v. Jarrell*, 350 S.C. 90, 98, 564 S.E.2d 362, 367 (Ct.App.2002) states that "in the context of homicide by abuse statutes, extreme indifference is a mental state akin to intent characterized by a deliberate act culminating in death." Therefore, the homicide by child abuse statute requires a type of activity similar to a deliberate act leading to death whereas involuntary manslaughter treats situations where an unlawful act leads to death when death would not normally have been expected.

The quiddity of Mitchell's argument focuses on the fact that the standard for homicide by child abuse is "extreme indifference to human life" whereas the standard for involuntary manslaughter is "reckless disregard for the safety of others." Mitchell contends the involuntary manslaughter standard has traditionally been treated as a lesser included offense and an alternative where the jury does not find "malice" or "extreme indifference to human life." However, this argument withers when exposed to the light of *Jarrell's* definition of extreme indifference. Mitchell fails the *Elliott* historical antecedent test.

## C. Other Jurisdictions

This case involves a novel issue of law. Concomitantly, we look to other jurisdictions for edification, enlightenment, and

guidance. California's involuntary manslaughter statute parallels South Carolina's division between lawful and unlawful activity except that our unlawful activity element requires the activity not naturally tend to cause death or great bodily harm. Additionally, California's unlawful activity element requires the activity not be a felony. *See* Cal.Penal Code § 192(b) (West) (defining involuntary manslaughter as "the unlawful killing of a human being without malice ... in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection ...").

Cal.Penal Code § 273ab reads:

Any person who, having the care or custody of a child who is under eight years of age, assaults the child by means of force that to a reasonable person would be likely to produce great bodily injury, resulting in the child's death, shall be punished by imprisonment in state prison for 25 years to life....

In *Orlina v. Superior Court*, 73 Cal.App.4th 258, 86 Cal. Rptr.2d 384, 386 (1999), the court concluded involuntary manslaughter is not a lesser included, but a lesser related, offense of that state's crime of "assault on a child under eight years of age resulting in death." The *Orlina* court held: "[T]he elements of involuntary manslaughter are not necessarily encompassed within the elements of section 273ab. Involuntary manslaughter is a lesser related rather than a lesser included offense of the charged crime." *Orlina* at 386. While this decision's persuasive authority is limited by some dissimilarity in South Carolina's and California's definitions of the related crimes, we find the decision supports our determination.

Similarly, New York law buttresses our conclusion. The pertinent New York statute provides:

A person is guilty of murder in the second degree when:

. . . .

4. Under circumstances evincing a depraved indifference to human life, and being eighteen years old or more the defendant recklessly engages in conduct which creates a grave risk of serious physical injury or death to another

person less than eleven years old and thereby causes the death of such person. . . .

N.Y. Penal § 125.25 (McKinney). New York defines manslaughter in the second degree as "recklessly caus[ing] the death of another person." N.Y. Penal § 125.15 (McKinney). In *People v. Robinson,* the New York Appellate Division held:

[M]anslaughter in the second degree is not a lesser included offense of murder in the second degree under Penal Law § 125.25(4). Creating a grave risk of serious physical injury is an element of Penal Law § 125.25(4) but is not an element of manslaughter in the second degree, and thus it is possible to commit the greater crime without also committing the lesser (*see, People v. Glover,* 57 N.Y.2d 61, 64, 453 N.Y.S.2d 660, 439 N.E.2d 376 [(1982)]).

*Robinson,* 278 A.D.2d 798, 723 N.Y.S.2d 277, 277–78 (N.Y.App. Div.2000).

We find the trial judge correctly concluded, as a matter of law, that Mitchell was not entitled to an instruction on involuntary manslaughter as a lesser included offense of homicide by child abuse. Mitchell fails both the elements test and the *Elliott* historical antecedent test. Consequently, the circuit court did not commit error.

## II. Involuntary Manslaughter Is Unsupported Factually

The circuit court found the evidence did not support a charge of involuntary manslaughter. A charge on 'a lesser included offense is only required when the evidence warrants such an instruction. *State v. Coleman,* 342 S.C. 172, 175, 536 S.E.2d 387, 389 (Ct.App.2000) (citing *Hopper v. Evans,* 456 U.S. 605, 611, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982)). The circuit court does not err in refusing to charge a lesser included offense "unless there is testimony tending to show that the defendant is only guilty of [the lesser included offense]." *State v. Hollman,* 245 S.C. 362, 364, 140 S.E.2d 597, 598 (1965). "[A]n instruction on a lesser included offense is proper only when the charged greater offense requires that the jury find a disputed factual element which is not a requisite for conviction of the lesser included offense." *State v. Cude,* 265 S.C. 313, 316, 218 S.E.2d 240, 242 (1975) (citation omitted).

In this case, Mitchell essentially argued he had no contact with Passion, except for a prior spanking, and he simply found her unconscious on the floor. These facts do not support an application of the charge of involuntary manslaughter.

## CONCLUSION

We hold that involuntary manslaughter is **NOT** a lesser included offense of homicide by child abuse based on the elements test. We rule that involuntary manslaughter is not a lesser included offense of homicide by child abuse under the *Elliott* antecedent test. Additionally, we conclude that this factual record does not support involuntary manslaughter as a lesser included offense of homicide by child abuse.

**AFFIRMED.**

STILWELL and SHORT, JJ., concur.