641 S.E.2d 873

**The STATE, Respondent**

v.

**Clinton Robert NORTHCUTT, Appellant.**

**No. 26271.**

Supreme Court of South Carolina.

Heard Oct. 17, 2006.

Decided Feb. 20, 2007.

Rehearing Denied March 22, 2007.

208

David I. Bruck and Robert E. Lominack, both of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy

Attorney General Donald J. Zelenka, all of the South Carolina Office of the Attorney General, of Columbia; and Solicitor Donald V. Myers, of Lexington, for Respondent.

Justice BURNETT:

Clinton Robert Northcutt (Appellant) was convicted of killing his infant daughter and sentenced to death. We reverse and remand for a new sentencing proceeding.

## *FACTUAL/PROCEDURAL BACKGROUND*

Appellant, his wife, Angie, who was pregnant with their second child, and their four-month old daughter, Breanna, resided in Lexington County, South Carolina. In early January 2001, Ms. Northcutt threatened to leave Appellant, but he took her car keys and prevented her from doing so. Two days later, Appellant shook, squeezed, slapped, punched, bit, strangled, and beat his infant daughter to death in an apparent fit of rage when she would not stop crying.

Appellant fled the home and was arrested near Atlanta later that day. Ms. Northcutt returned home from work that evening and found Appellant's wedding ring lying on a table and a message on the answering machine in which Appellant told his wife the baby was dead and apologized for what he had done. He also told her he was leaving and going far away so he would no longer hurt anyone. Ms. Northcutt then found the baby's body in the crib, and called emergency personnel.

An autopsy revealed severe and extensive trauma to the child's body and significant bruising, internal hemorrhaging, and bone fractures indicative of shaken baby syndrome. According to the examining pathologist, more than one of the baby's injuries alone were potentially fatal. He estimated the injuries were inflicted over a seven to fifteen minute time frame, although it could have been as little as two to three minutes. He testified there were no old bruises or injuries on her body and that all injuries stemmed from this single event.

The jury found Appellant guilty of murder. In the sentencing phase the State introduced evidence in aggravation of punishment including: (1) suspensions and school vandalism by the Appellant when he was in middle school; (2) an incident, for which he served one year in the Department of

Juvenile Justice (DJJ), in which Appellant brought a loaded handgun to school; and (3) three disciplinary infractions Appellant committed during his two-and-a-half years in pre-trial confinement. Appellant presented evidence in mitigation showing he suffered physical violence and emotional abuse at the hand of his alcoholic father who, at the time of Appellant's trial, was serving an eight-year prison sentence for sexually molesting Appellant's nine-year-old half-sister. Evidence also showed Appellant failed to receive help or treatment from the Department of Social Services (DSS), despite numerous child abuse complaints and injuries to Appellant from the time he was age five until age fourteen. The jury returned a death sentence.

## *ISSUES*

I. Did the trial judge err in denying Appellant's request to submit homicide by child abuse as a lesser-included offense of murder?

II. Did the trial judge err in requiring Appellant to direct his expert witnesses to generate written reports for the prosecution?

III. Did the trial judge err in admitting evidence that the baby had suffered a broken leg at age ten-weeks while Appellant was removing her from a swing-seat, in the absence of any evidence that the injury was the result of child abuse?

IV. Did the trial judge err in admitting a letter from Ms. Northcutt to a defense social worker in which Ms. Northcutt stated she had "no sympathy" for Appellant?

V. Should Appellant have been permitted to introduce a letter to his wife expressing remorse for the death of their baby in response to the wife's testimony that Appellant's post-arrest phone calls to her had shown a lack of remorse and concern?

VI. Did the solicitor's closing argument so infect the jury's sentencing determination with passion and prejudice that it requires reversal of the death sentence?

### STANDARD OF REVIEW

 In criminal cases, this Court sits to review errors of law only. *State v. Cutter,* 261 S.C. 140, 199 S.E.2d 61 (1973). This Court is bound by the trial judge's factual findings unless they are clearly erroneous. *State v. Wilson,* 345 S.C. 1, 545 S.E.2d 827 (2001).

### *LAW/ANALYSIS*

### I. Lesser–Included Offense

 Appellant argues the trial judge erred in failing to submit homicide by child abuse as a lesser-included offense of the murder of a child under age twelve. We disagree.

The indictment charged Appellant with the crime of murder under S.C.Code Ann. § 16–3–20 (Supp.2005). The State submitted a notice of evidence in aggravation of punishment listing the following statutory aggravators: (1) the murder was committed in the commission of physical torture; and (2) the victim was a child eleven years of age or under.[1]

 The test for determining whether a crime is a lesser included offense of the crime charged is whether the greater of the two offenses includes all the elements of the lesser offense. *Hope v. State,* 328 S.C. 78, 492 S.E.2d 76 (1997). If the lesser offense includes an element not included in greater offense, then the lesser offense is not included in the greater. *Id.*

Homicide by child abuse requires proof of the death of a child under age eleven during the commission of child abuse or neglect and the death occurs under circumstances showing extreme indifference to human life. S.C.Code Ann. § 16–3–85 (2003). Murder is the "killing of any person with malice aforethought, either express or implied." *Id.* § 16–3–10.

[5] Homicide by child abuse is not a lesser included offense of murder. An element of homicide by child abuse, the death of a child under age eleven, is not an element of murder. Thus, the elements test has not been met. "A lesser offense is included in the greater only if each of its elements is *always* a

---

1. S.C.Code Ann. § 16–3–20(C)(a)(1)(h) and (10) (2003).

necessary element of the greater offense." *Knox v. State,* 340 S.C. 81, 530 S.E.2d 887, *overruled on other grounds by State v. Gentry,* 363 S.C. 93, 610 S.E.2d 494 (2005).[2]

When an offense fails to meet the elements test, this Court will nevertheless construe it as a lesser included offense if the offense has traditionally been considered a lesser included offense of the greater offense charged. *State v. Burton,* 356 S.C. 259, 264, 589 S.E.2d 6, 8 (2003) (citing *State v. Watson,* 349 S.C. 372, 563 S.E.2d 336 (2002)). There is no historical antecedent suggesting homicide by child abuse is a lesser included offense of murder. Because homicide by child abuse is not a lesser included offense of murder under either the elements test or the historical antecedent test, the trial judge did not err in denying Appellant's request to submit homicide by child abuse as a lesser included offense of murder.

## II. Expert Reports

Appellant argues the trial judge erred by requiring him to direct his expert witnesses to generate written reports for the benefit of the prosecution. We agree.

Before trial, the State submitted a motion requesting the names and addresses of all potential expert witnesses upon whom Appellant intended to rely to establish a mental defense or "any other mental deficiency." The State also requested Appellant "disclose the conclusions and reports of any and all potential expert witnesses reduced to writing and accompanied by any and all written materials and all other materials upon which such an opinion is based." The motion failed to cite any South Carolina rule governing pretrial discovery. The trial judge ordered Appellant to comply with the State's request,

---

2. *Compare State v. Mitchell,* 362 S.C. 289, 296, 608 S.E.2d 140, 144 (Ct.App.2005) ("The crime of homicide by child abuse only applies in cases where the decedent is under the age of eleven whereas the application of involuntary manslaughter is not affected by the age of the decedent."); *State v. Elliott,* 344 N.C. 242, 475 S.E.2d 202, 218–219 (1996) ("[F]irst-degree murder and felony child abuse each 'requires proof of a fact which the other does not.' ") (citation omitted); *State v. Molina,* 271 Neb. 488, 713 N.W.2d 412, 432 (2006) ("It is clear ... that child abuse resulting in death requires proof of an element that second degree murder does not: that the death was that of a minor child.").

noting the "standard procedure has been to require both sides to produce reports."

Rule 5(b)(1)(B) of the South Carolina Rules of Criminal Procedure creates a right of reciprocal discovery:

> If the defendant requests disclosure under subdivision (a)(1)(C) or (D) of this rule, upon compliance with such request by the prosecution, the defendant, on request of the prosecution, shall permit the prosecution to inspect and copy any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call at trial when the results or reports relate to his testimony.

The rule requires the production of reports "within the possession" of the defense. However, it does not authorize the trial judge to require parties to generate written reports solely for the benefit of the opponent. Therefore, the trial judge erred in requiring Appellant to direct his expert witnesses to prepare written reports for the prosecution.

██ Determining the trial judge committed error is the first step of our analysis. Next we must determine whether the error was harmless. *Franklin v. Catoe*, 346 S.C. 563, 572, 552 S.E.2d 718, 723 (2001) ("the harmless error rule and a prejudice analysis are no strangers to cases involving the death penalty").

> Whether an error is harmless depends on the circumstances of the particular case. No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case. Error is harmless when it "could not reasonably have affected the result of the trial."

*State v. Mitchell*, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985) (citing *State v. Key*, 256 S.C. 90, 180 S.E.2d 888 (1971)).

██ Appellant argues the State was unfairly benefited by the reports and was able to prosecute and cross-examine more vigorously because of the reports. The State contends, and we agree, the written reports generated by Appellant's ex-

perts did not advantage the State any more than the notes, data, and other materials properly disclosed under Rule 5, SCRCrimP. The written reports only summarized the contents of other discoverable materials.

Appellant also argues the erroneous extension of Rule 5(b), S.C.R.Crim.P., by the trial judge resulted in the prejudicial exclusion of certain testimony from Dr. Tracy Gunter. Dr. Gunter performed a family court-ordered evaluation of Appellant at DJJ in 1995.[3] Although she diagnosed appellant with conduct disorder in 1995, she changed her diagnosis to Post–Traumatic Stress Disorder before the 2003 litigation in light of new information. The trial judge excluded any testimony not related to the 1995 evaluation because Dr. Gunter's written report was based only on her 1995 encounter with Appellant.

Although Dr. Gunter's entire testimony was critical in establishing mitigating evidence for Appellant, there was no prejudice to Appellant. Dr. Gunter was able to convey the crux of her testimony by stating she was hampered in her evaluation of Appellant in 1995 by a lack of DSS records showing the abuse Appellant had endured at the hand of his father. Dr. Gunter expressed concerns at the time of the evaluation that Appellant might have Post–Traumatic Stress Disorder or some type of dissociative disorder. She further stated her 1995 diagnosis was not reliable or credible due to the lack of DSS records made available to her. Because the erroneous extension of Rule 5, S.C.R.Crim.P., by the trial judge could not reasonably have affected the result of the trial, we conclude the error was harmless beyond a reasonable doubt.

### III. Evidence of the Baby's Prior Injury

 Appellant argues the trial judge erroneously admitted evidence the baby suffered a broken leg at age ten-weeks when Appellant removed her from a swing-seat. We agree.

During the sentencing phase of Appellant's trial, the State introduced evidence that in October, 2000, nearly two months prior to the baby's death, Appellant accidentally injured her while removing her from a swing-seat. The baby was diag-

---

**3.** Appellant was at DJJ because he had been found delinquent on a charge of bringing a firearm to school.

nosed with and treated for a spiral fracture of the leg. The diagnosis of such an injury at a hospital is a "red flag" for possible child abuse; however, the treating physician did not refer the matter to DSS, the logical inference being the physician ruled out child abuse after treating the baby and meeting the parents.[4] The State argued the fact Appellant caused the injury was sufficient to warrant the introduction of the evidence as relevant to the issue of his character and his relationship with his baby. Appellant argued the jury would interpret "an accident that could have happened to anybody" as child abuse through "the distorting lens of hindsight."

The admission of evidence is left to the sound discretion of the trial judge whose decision will not be reversed on appeal absent an abuse of discretion. *State v. McDonald*, 343 S.C. 319, 540 S.E.2d 464 (2000). The trial judge abused his discretion in admitting evidence of the prior injury because it unfairly prejudiced Appellant. Not only is such evidence arguably irrelevant, it is highly prejudicial and should have been excluded pursuant to Rule 403, SCRE. Further, the error in admitting evidence the baby had suffered this injury was not harmless. The State's purpose in introducing the evidence was to shed light on Appellant's relationship with the baby and to highlight the family tension that ensued during the two months prior to the baby's death. The baby's prior injury was, under all accounts, an accident. However, in light of Appellant's outburst of violence against his baby two months after this injury, the jury likely misperceived the evidence resulting in unfair prejudice to Appellant. The erroneous admission of this evidence requires reversal of Appellant's death sentence. *State v. Locklair*, 341 S.C. 352, 535 S.E.2d 420 (2000) (in order for an error to warrant reversal, the error must result in prejudice to the appellant).

## IV. Letter from Ms. Northcutt

Appellant argues the trial judge erred by admitting a letter from Ms. Northcutt to a defense social worker in which

---

4. The pathologist who performed the baby's autopsy noted a healing fracture of the femur. He stated such an injury is "one of the signals to the emergency room and to pediatricians to investigate the possibility of child abuse." He presumed an investigation had occurred here and multiple physicians had considered and ruled out child abuse as the cause of the baby's injury.

Ms. Northcutt stated she had "no sympathy" for Appellant. We disagree.

On cross-examination, Dr. Arlene Andrews, a defense social worker, testified she tried to talk with Ms. Northcutt about the parental care of the baby; however, Ms. Northcutt declined to be interviewed. In an effort to impeach the witness, the solicitor read a letter written to Dr. Andrews by Ms. Northcutt in which Ms. Northcutt stated: "I have no sympathy for him and his actions, nor do I have any recollections or thought (*sic*) that would be sympathetic to him in any way." The trial judge overruled Appellant's objection and allowed the letter into evidence.

Appellant argues the State improperly introduced evidence of the victim's family member's opinion in violation of *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), *overruled on other grounds by Payne v. Tennessee,* 501 U.S. 808, 830 n. 2, 111 S.Ct. 2597, 2611 n. 2, 115 L.Ed.2d 720, 721 (1991) ("admission of a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence violates the Eighth Amendment"). Expressing a lack of sympathy, however, does not offend the *Booth* proscription. Rather than expressing her opinion of Appellant, Ms. Northcutt was responding to Dr. Andrew's inquiry.

██ The trial judge did not err in admitting the letter from Ms. Northcutt to Dr. Andrews. Even if the admission of the letter were error, the error was harmless. In light of Ms. Northcutt's testimony and the record before us, the admission of the letter did not prejudice Appellant nor did it affect the result of the trial.

### V. Letter from Appellant

██ Appellant argues he should have been permitted to introduce a letter he wrote to his wife expressing remorse for the death of their child in response to Ms. Northcutt's testimony that his post-arrest phone calls to her showed a lack of remorse and concern. We agree.

Ms. Northcutt testified of a series of phone calls she received from Appellant while he was in pre-trial confinement. Ms. Northcutt's testimony implied Appellant never expressed

concern for her or their deceased child or remorse for his actions. On cross-examination, counsel for Appellant attempted to question her about a letter she received from Appellant nine days following the murder. The letter written by Appellant expressed remorse and sorrow for his actions.

■ The trial judge erroneously excluded the evidence. The prosecution had opened the door for Appellant to present evidence of his remorse. Appellant is entitled to rebut the State's argument and correct the false impression the State conveyed to the jury. The portion of the letter directly addressing Appellant's remorse was admissible. The State cannot preclude the jury from considering "any relevant mitigating evidence" the defendant proffers in support of sentence less than death. *Payne*, 501 U.S. at 822, 111 S.Ct. at 2606, 115 L.Ed.2d at 721 (citing *Eddings v. Oklahoma*, 455 U.S. 104, 114, 102 S.Ct. 869, 877, 71 L.Ed.2d 1, 1 (1982)). The letter, as a whole, however, is subject to redaction because portions are inadmissible hearsay.[5] A portion of the letter is admissible for the limited purpose of rebutting the State's argument Appellant had no remorse.

■ Although it was error for the trial judge to exclude the letter written from Appellant to Ms. Northcutt expressing remorse, the error was harmless. The record contains evidence of Appellant's remorse. Appellant was not prejudiced, nor was the outcome of the trial affected.

## VI. Closing Argument

Appellant argues the solicitor's sentencing-phase closing argument so infected the jury's sentencing determination with passion and prejudice that it requires reversal of Appellant's death sentence. We agree.

---

5. Appellant fails to cite any exception to the hearsay rule which would allow the introduction of the entire letter. Appellant's reliance on Rule 803(3), SCRE, is misplaced because the letter does not qualify as Appellant's then existing state of mind.

 Also, Appellant's reliance on *State v. Cabrera–Pena*, 361 S.C. 372, 605 S.E.2d 522 (2004), is misplaced. In *Cabrera–Pena*, the Court applied the "rule of completeness" to allow the defendant to develop the full substance of a conversation when the prosecution witness testified to only portions of the conversation. The instant case lacks the contemporaneous quality of the conversation in *Cabrera–Pena*.

A trial judge is vested with broad discretion in dealing with the range of propriety of closing argument, and ordinarily his rulings on such matters will not be disturbed. *State v. Patterson,* 324 S.C. 5, 17, 482 S.E.2d 760, 766 (1997). We must review the argument in the context of the entire record. *Id.* The appellant has the burden of showing that any alleged error in argument deprived him of a fair trial. *State v. Bell,* 302 S.C. 18, 393 S.E.2d 364 (1990). The relevant question is whether the solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Solicitors are bound to rules of fairness in their closing arguments as we explained in *State v. Linder,* 276 S.C. 304, 312, 278 S.E.2d 335, 339 (1981):

> While the solicitor should prosecute vigorously, his duty is not to convict a defendant but to see justice done. The solicitor's closing argument must, of course, be based upon this principle. The argument therefore must be carefully tailored so as not to appeal to the personal bias of the juror nor be calculated to arouse his passion or prejudice.

We evaluate the closing argument in light of S.C.Code Ann. § 16–3–25(C)(1) (2003) to determine "whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor."

Appellant argues the solicitor violated this well-established rule by (1) crying numerous times throughout the argument; (2) telling the jury "we will kick the baby some more" if they returned a life sentence; (3) dehumanizing Appellant ("I don't even call him a person"); (4) threatening the jury ("it will be on your heads if he kills someone else [during his life sentence in prison]"); (5) declaring an "open season on babies;" (6) telling the jury he "expects" the death penalty; and (7) enacting a funeral procession complete with a black shroud covering the baby's crib.

Three of the solicitor's arguments require reversal of the sentence.[6] First, the solicitor suggested declaring an "open season on babies in Lexington County" if the death

---

6. The first four alleged mistakes are permissible arguments because they were based on the record and reasonable inferences from it. *See State v. Copeland,* 321 S.C. 318, 468 S.E.2d 620 (1996) ("A solicitor's

penalty was not returned. The sole purpose of this statement was to inflame the jury. The solicitor also repeatedly told the jury he "expects" the death penalty and, in doing so, ignored our precedent which rebukes such an imposition of the solicitor's personal belief.[7] Finally, he concluded his argument by producing a large black shroud and draping it over the baby's crib. He wheeled the crib from the courtroom in a staged funeral procession.

Any one of these three miscues requires reversal of Appellant's sentence. The State admits the solicitor's comments constituted error, but contends the brutality of the crime and the fact Appellant himself asked for the death penalty require this Court uphold the sentence.[8] While it is difficult to determine the impact of the evidence on the jury and the Appellant's own request for a death sentence, it is clear the solicitor was overly zealous in his argument. *State v. White*, 246 S.C. 502, 507, 144 S.E.2d 481, 483 (1965) ("In view of the absolute discretion of the jury with regard to the issue of mercy, it is impossible to determine whether the argument actually had a prejudicial effect upon the verdict."). We conclude the solicitor's closing argument requires reversal of Appellant's death sentence because the sentence was imposed under the influence of passion and prejudice in violation of S.C.Code Ann. § 16-3-25(C).

## CONCLUSION

Because of the solicitor's prejudicial closing argument and the inclusion of evidence of the child's prior leg injury, we

---

closing argument ... should stay within the record and reasonable inferences to it.").

7. *See State v. Smart*, 278 S.C. 515, 299 S.E.2d 686 (1982) (reversing a death sentence because of the same error by the same solicitor), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991); *Thompson v. Aiken*, 281 S.C. 239, 315 S.E.2d 110 (1984) (finding prejudicial error where prosecutor's argument put his personal opinion before the jury regarding the death penalty in murder cases and requiring a new sentencing proceeding).

8. After the solicitor's closing argument, Appellant told the jury: "I killed a defenseless, helpless, four-month-old baby, my daughter. All I ask is do the right thing and bring back the right sentence. Under the law, that would be the death sentence."

224

reverse Appellant's death sentence and remand for further sentencing proceedings.

**REVERSED AND REMANDED.**

MOORE and WALLER, JJ., concur.

TOAL, C.J., dissenting in a separate opinion.

PLEICONES, J., concurring in a separate opinion.

Chief Justice TOAL, dissenting:

I respectfully dissent. In my view, the trial court did not err in admitting evidence regarding the victim's prior leg injury. Furthermore, I disagree with the majority's conclusion that the solicitor's conduct during his closing argument rose to the level of a constitutional violation or otherwise requires reversal.

The relevant jurisprudence instructs that "the Constitution requires the jury to make an individualized determination as to whether the defendant should be executed based on the 'character of the individual and the circumstances of the crime.'" *Payne v. Tennessee,* 501 U.S. 808, 818, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (quoting *Booth v. Maryland,* 482 U.S. 496, 502, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and *Zant v. Stephens,* 462 U.S. 862, 879, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983)). Accordingly, it is well established that evidence which is probative of the defendant's character is admissible in a capital sentencing proceeding. *See State v. Gaskins,* 284 S.C. 105, 124, 326 S.E.2d 132, 143 (1985) [9] (quoting *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), and citing *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)). In my view, this practice derives from the command that the decision to impose the death penalty be based on who the defendant is and what he has done. In my opinion, the majority incorrectly posits that the evidence regarding the victim's prior leg injury was irrelevant and mistakenly concludes that this evidence, if admitted improperly, prejudiced Appellant.

9. Overruled on other grounds by *State v. Torrence,* 305 S.C. 45, 70 n. 13, 406 S.E.2d 315, 329 n. 5 (1991).

Of course, the evidence of the victim's prior leg injury was clearly relevant to Appellant's character. The State did not offer the injury as evidence that Appellant was guilty of child abuse, but instead, offered the injury as evidence that Appellant's actions with his child, prior to his brutally murdering her, were occasionally reckless and callous. The majority's bald assertion that this evidence is "arguably irrelevant" is unavailing.

Furthermore, assuming, as the majority seems to, that Rule 403, SCRE, required the trial court to exclude this evidence as substantially more prejudicial than probative, I fail to see how this error prejudiced Appellant.[10] Although Appellant may be correct in that the circumstances of this possibly accidental injury could have been viewed differently by the jury through the "distorted lens of hindsight," the trial court gave extensive instructions to the jury regarding this particular evidence, regarding evidence of character generally, and regarding the factors the jury was required to consider in deciding on the appropriate penalty in this case. As this Court has noted, it is the duty of the jury to take the law from the court in the case on trial and "[i]t must be presumed that they do so." *State v. Queen*, 264 S.C. 515, 521, 216 S.E.2d 182, 185 (1975).

The majority's finding of prejudice in this case is all the more remarkable given the brutal events which were the subject of this sentencing proceeding.[11] The solicitor referred to the victim's prior injury only once in his closing argument, remarking that it demonstrated that Appellant was not handling the victim "carefully" and "lovingly" two months prior to the victim's death. As a notable jurist once stated, "[s]urely

---

**10.** I note that such an assumption is odd given that we have said that an abuse of discretion occurs only when the trial court's decision is controlled by an error of law or where its order is based on factual conclusions that are without evidentiary support. *Renney v. Dobbs House, Inc.*, 275 S.C. 562, 564, 274 S.E.2d 290, 291 (1981) (citing *Stewart v. Floyd*, 274 S.C. 437, 265 S.E.2d 254 (1980)).

**11.** As the record reveals, in administering the beating which ultimately took the life of the four month old victim, Appellant slapped the victim with such force that his wedding ring left marks on the victim's scalp, punched the victim, choked the victim, shook the victim, bit the victim with such force that it left an imprint in the victim's bone, threw the victim on nearby household furniture, and ultimately broke the victim's back across the railing of the victim's crib.

this brief statement did not inflame [the jury's] passions more than did the facts of the crime." *Payne*, 501 U.S. at 831, 111 S.Ct. 2597. Furthermore, in the final testimony offered to the jury before the court's charges, Appellant himself requested that the jury sentence him to death for the murder of his daughter. In my view, Appellant has not demonstrated how any error the trial court committed in the admission of evidence prejudiced his case, and under these facts, I believe such a showing would indeed be a tall order.

The majority also concludes that three aspects of the solicitor's closing argument require reversal in this case "because the [death] sentence was imposed under the influence of passion and prejudice in violation of S.C.Code Ann. § 16–3–25(C)." I disagree.

As a primary matter, Appellant did not contemporaneously object to the solicitor's use of the black cloth and crib during closing argument. Thus, Appellant did not preserve any argument for our review as it relates to this conduct. *See Varnadore v. Nationwide Mut. Ins. Co.*, 289 S.C. 155, 159, 345 S.E.2d 711, 714 (1986) (stating that "the proper course to be pursued when counsel makes an improper argument is for opposing counsel to *immediately* object...").

As I explained in my dissenting opinion in *State v. Burkhart*, 371 S.C. 482, 640 S.E.2d 450 (2007), I believe this Court's jurisprudence which suggests that § 16–3–25(C) imposes a separate standard by which this Court should judge the conduct of capital sentencing proceedings is misguided and mistaken. The soundness of my position as it would apply here is underscored by the fact that, when registering objections during the solicitor's closing argument, Appellant did not argue that the argument was improper under South Carolina's statutory law. Instead, Appellant argued that the solicitor's arguments "were inflammatory" and "violat[ed] the Eighth Amendment." Perplexingly, the majority's analysis begins by discussing the well-established constitutional guideposts that characterize capital jurisprudence, only to end with the naked conclusions that the argument was "overzealous" and in violation of a provision of the South Carolina Code.

The Eighth Amendment is violated when the decision to impose the death penalty is made in an arbitrary manner, or

"out of a whim, passion, prejudice, or mistake." *Caldwell v. Mississippi*, 472 U.S. 320, 329–30, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); *State v. Copeland*, 278 S.C. 572, 587, 300 S.E.2d 63, 72 (1982). Violations of the Fourteenth Amendment occur when something "so infects the trial with unfairness as to make the resulting conviction a denial of due process." *See Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). A trial court is vested with great discretion in dealing with the propriety of a closing argument to the jury, and, on appeal, a reviewing court must view the alleged impropriety of the closing argument in the context of the entire record. *State v. Woomer*, 277 S.C. 170, 174–75, 284 S.E.2d 357, 359 (1981) (citing *State v. Durden*, 264 S.C. 86, 212 S.E.2d 587 (1975), and *State v. Linder*, 276 S.C. 304, 278 S.E.2d 335 (1981)).

When viewed in the context of the entire record, I do not believe that the solicitor's comments so infected Appellant's sentencing proceeding with unfairness as to result in a denial of due process. Regardless of whether the majority is correct in its assertion that the sole purpose of the solicitor's "open season" comment was to inflame the jury, the relevant inquiry is whether the argument, taken as a whole, resulted in a violation of the Fourteenth Amendment.

Likewise, I disagree with the assertion that the solicitor's remark in which he expressed that he expected the death penalty requires reversal. The solicitor's closing argument fills thirty-five pages of the record. I seriously doubt that either of these two comments, each filling only one line on separate pages of the record, permeated the sentencing proceeding with any degree of unfairness.

The majority cites two cases as examples of jurisprudence from this Court "rebuk[ing]" such an imposition of the solicitor's personal belief into a capital sentencing proceeding. As I stated in my *Burkhart* dissent, these cases are but examples of a line of this Court's precedent which is based upon what I believe is a skewed reading of § 16–3–25(C). Of course, the introduction of overly inflammatory evidence as well as arguments which impermissibly appeal to the passions or prejudices of a jury have the potential to violate the Eighth or Fourteenth Amendments. Interestingly, the relevant federal

precedent rejects a steadfast rule of reversal whenever "personal opinion" is injected into a closing argument in a capital sentencing proceeding. *See Darden*, 477 U.S. at 178 n. 8, 181–82, 106 S.Ct. 2464 (affirming, on habeas corpus review, a death sentence over the claim that the prosecutor's remark that he believed the state had carried its burden to support such a penalty violated the Fourteenth Amendment). At least from a constitutional perspective, we have nonchalantly adopted a rule that the United States Supreme Court has rejected.

Affirming a conviction which follows an argument containing improper components is an unpleasant task. Appellant's sentencing proceeding was not perfect, but few are. On the record presented for our review, however, I cannot conclude that Appellant's sentencing proceeding was fundamentally unfair. Our jurisprudence unwaveringly provides that we are to presume that juries follow their instructions and that proper instruction of the jury by the court cures most errors. *See State v. Ard*, 332 S.C. 370, 386, 505 S.E.2d 328, 336 (1998) (citing *State v. Pierce*, 289 S.C. 430, 346 S.E.2d 707 (1986)).[12] Instead of following this jurisprudence in the capital arena, I believe we have ignored it. We ought to be more dutiful and genuine in our analysis. The jury was instructed that it was the sole finder of facts in the proceeding; that it was to give Appellant every benefit of every reasonable doubt; that the burden of proof rested entirely upon the State; and that the jury was to make its decision dutifully, fairly, impartially, without passion, without prejudice, and without excessive emotion. I would presume that the jury followed these instructions, and I would find that the jury's verdict calling for the death penalty was not imposed in violation of the Eighth Amendment. For the foregoing reasons, I would hold that even if the trial court erred in admitting evidence relating to the victim's prior injury, Appellant has not shown prejudice to warrant reversal of his sentence. Also, I would hold that the solicitor's closing argument was not so improper as to violate the Eighth or Fourteenth Amendments to the Constitution.

---

12. Though not relevant to my analysis, *Ard* was overruled on other grounds by *State v. Shafer*, 340 S.C. 291, 304 n. 12, 531 S.E.2d 524, 531 n. 12 (2000). Similarly, *Pierce* was overruled on other grounds by *Torrence*, 305 S.C. at 70 n. 13, 406 S.E.2d at 329 n. 5 (1991).

Justice PLEICONES, concurring:

I concur in the majority's decision to reverse appellant's capital sentence but write separately because I would decide certain issues differently.

Specifically, I view the admission of Ms. Northcutt's letter to Dr. Andrews as error, and would find the solicitor's closing argument improper in at least one aspect deemed acceptable by the majority. As to the letter, I find Ms. Northcutt's reason for declining to speak with Dr. Andrews simply irrelevant. *See e.g., State v. Burkhart*, 371 S.C. 482, 640 S.E.2d 450 (2007) , (evidence in the sentencing phase must be relevant to the defendant's character or the circumstances of the crime). As to the solicitor's closing argument, in my view it was improper for him to argue the jury would be responsible for any future criminal acts of appellant if a life sentence were returned. This argument, which projects personal responsibility upon jurors and plays to their fear, "injects an arbitrary factor" into the sentencing decision. *State v. Shuler*, 353 S.C. 176, 577 S.E.2d 438 (2003). I cannot agree with the majority that it was a "permissible argument . . . based on the record and reasonable inferences from it." Technically, perhaps, the crying, the "kick the baby some more," and the dehumanizing of appellant arguments are within allowable parameters, but it is beyond dispute that the closing argument here repeatedly transgressed firmly established boundaries and precedents. It does not serve justice for a prosecutor to engage in such histrionic gamesmanship, especially where a jury is being asked to make a life or death decision.

With these qualifications, I concur in the majority's decision to reverse appellant's capital sentence and remand the matter for a new proceeding.