671 S.E.2d 600

**Luke A. WILLIAMS III, Petitioner,**

**v.**

**Jon OZMINT, Commissioner, South Carolina Department of Corrections, Respondent.**

**No. 26573.**

Supreme Court of South Carolina.

Heard Oct. 22, 2008.

Decided Dec. 22, 2008.

Rehearing Denied Jan. 22, 2009.

See also, 494 F.3d 478.

474

David I. Bruck, of Lexington, VA, Keir M. Weyble, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, of Columbia, for Respondent.

Chief Justice TOAL:

Petitioner Luke A. Williams was convicted of murder and sentenced to death. Petitioner has exhausted his appeals and now seeks a writ of habeas corpus from this Court based on our decision in *State v. Northcutt*, 372 S.C. 207, 641 S.E.2d 873 (2007).

### FACTUAL/PROCEDURAL BACKGROUND

In 1993, a jury found Petitioner guilty of the murders of his wife and son. During the sentencing phase, the solicitor stated three times that he "expected" the death penalty. Defense counsel did not object, and the jury sentenced Petitioner to death.

Petitioner's convictions and sentences were affirmed on direct appeal. *State v. Williams*, 321 S.C. 327, 468 S.E.2d 626 (1996). Petitioner applied for post-conviction relief (PCR) raising three issues. The PCR court granted relief on the third ground.[1] However, this Court reversed, finding lack of prejudice. *Williams v. State*, 363 S.C. 341, 611 S.E.2d 232

---

1. Petitioner raised the issue of the solicitor's improper closing argument in this PCR application, but the PCR court denied relief on this ground.

476

(2005). The United States District Court for the District of South Carolina granted Petitioner a writ of habeas corpus, but the Fourth Circuit Court of Appeals reversed the district court's decision. *Williams v. Ozmint,* 494 F.3d 478 (4th Cir.2007), *cert. denied,* —— U.S. ——, 128 S.Ct. 1445, 170 L.Ed.2d 278 (2008).

Petitioner now seeks issuance of a writ of habeas corpus based on this Court's decision in *State v. Northcutt,* 372 S.C. 207, 641 S.E.2d 873 (2007), in which this Court reversed the defendant's death sentence based upon the solicitor's improper statements in the sentencing phase.

## LAW/ANALYSIS

Petitioner argues that he is entitled to habeas relief because the solicitor improperly stated that he "expected" the death penalty during his sentencing argument. We disagree.

At common law, habeas relief was only available to a convicted defendant to attack the jurisdiction of the court imposing the sentence. *See Ex parte Klugh,* 132 S.C. 199, 128 S.E. 882 (1925) (recognizing that habeas corpus is a collateral remedy and calls in question only the jurisdiction of the court whose judgment is challenged). However, during the 1950s and 1960s, South Carolina courts greatly expanded the use of the writ in order to ensure that our state afforded prisoners a proceeding where they could assert claims regarding constitutional violations. *See Simpson v. State,* 329 S.C. 43, 44, 495 S.E.2d 429, 430 (1998) (recognizing that the appeals in habeas matters increased between 1950 and 1970 apparently in response to United States Supreme Court decisions relating to the exhaustion of state remedies requirement for federal habeas corpus relief). In 1969, South Carolina adopted our version of the Uniform Post–Conviction Relief Act (UPCA), which drastically limited the availability of habeas corpus. *See* James Blume, note, *An Introduction to Post–Conviction Remedies, Practice and Procedure in South Carolina* 45 S.C.L.Rev. 235, 263 (recognizing that following the adoption of the UPCA, post-conviction relief largely replaced habeas corpus relief). The UPCA directed that post conviction relief (PCR) was to encompass the relief available under the common law writ of habeas corpus, the relief available under the expansion of the writ, and the relief available by collateral

attack under any common law, statutory or other writ, motion, petition, proceeding, or remedy. *See Simpson,* 329 S.C. at 44, 495 S.E.2d at 430; S.C.Code Ann. § 17–27–20(b) (2007).

In a PCR proceeding, a defendant collaterally attacks his conviction and may raise any claims of constitutional violations relating to his conviction. *See* S.C.Code Ann. § 17–27–20(a) (2007). Every applicant has the right to appellate review of the denial of PCR, and every applicant is entitled to the assistance of counsel in seeking review of the denial of PCR. *Bray v. State,* 366 S.C. 137, 139–40, 620 S.E.2d 743 (2005). Counsel is required to advise a PCR applicant of the right to appellate review of the denial of PCR and to brief arguable issues to safeguard the right to appeal, despite counsel's belief that the appeal is frivolous. *Id.* Although successive PCR applications are disfavored, they are not prohibited.[2] *See Washington v. State,* 324 S.C. 232, 478 S.E.2d 833 (1996) (allowing successive PCR application where the defendant was denied due process due to numerous procedural irregularities); *Aice v. State,* 305 S.C. 448, 409 S.E.2d 392 (1991) (denying a successive PCR application where the defendant failed to show a sufficient reason to entertain the successive application).

Notwithstanding the exhaustion of appellate review, including all direct appeals and PCR, habeas corpus relief remains available to prisoners in South Carolina. *See* S.C. Const. art. I, § 18. Habeas relief is seldom used and acts as an ultimate ensurer of fundamental constitutional rights. For these reasons, a defendant bears a much higher burden in a habeas proceeding. A writ of habeas corpus is reserved for the very gravest of constitutional violations "which, in the setting, constitute[ ] a denial of fundamental fairness shocking to the universal sense of justice." *Green v. Maynard,* 349 S.C. 535, 538, 564 S.E.2d 83, 84. It is clear that "not every intervening decision, nor every constitutional error at trial will justify the writ." *McWee v. State,* 357 S.C. 403, 406, 593 S.E.2d 456, 457 (2004) (quoting *Green v. Maynard,* 349 S.C. at

---

2. In fact, Petitioner's PCR application mentioned above was successive. The PCR court allowed it to proceed on the merits finding that Petitioner did not receive adequate assistance of PCR counsel in his first application.

538, 564 S.E.2d at 84). A defendant who seeks a writ of habeas corpus based on an error recognized as a constitutional violation after his conviction must show that, in the setting, the violation denied him fundamental fairness. *Butler v. State*, 302 S.C. 466, 468, 397 S.E.2d 87, 88 (1990). It is against this backdrop that we must review Petitioner's case.

At the beginning of the sentencing phase, the solicitor stated that "we're seekin' [the death penalty] and we expect to get it." At the beginning of his closing argument, the solicitor stated again "we expect the death penalty" and finished his closing argument with "... you can give him what he deserves. What he gave them! And we ask for it! Be bold! Be strong! Do what this case screams out for! We ask for it! We seek it! We expect to get the death penalty."

Petitioner argues that this Court should issue a writ of habeas corpus based on *State v. Northcutt*, in which this Court reversed the defendant's death sentence based in part upon the solicitor's statements that he "expected" the death penalty in his closing argument of the sentencing phase. Petitioner contends that the solicitor injected his own authority into the jury's deliberations and that the implication of the solicitor's argument was that his expectation was a proper consideration for the jury to weigh in deciding whether to impose the death penalty. We disagree.

In *Northcutt*, this Court held that the solicitor's interjection of "expecting" the death penalty required reversal because such comments imposed the solicitor's personal beliefs upon the jury. 372 S.C. at 223, 641 S.E.2d at 881. In our view, *Northcutt* is inapposite. The Court did not hold that the solicitor's comments regarding "expecting" the death penalty constituted a denial of fundamental fairness shocking to the universal sense of justice. Rather, we held that the solicitor's closing argument as a whole [3] infused the sentencing proceeding with "passion and prejudice" in violation of S.C.Code § 16–3–25(C)(1) (2003). *Northcutt* at 222, 641 S.E.2d at 881. Fur-

---

**3.** The solicitor in *Northcutt*, an infant homicide case, not only stated that he "expected" the death penalty, but also declared that it would be "open season on babies" if the jury did not return the death penalty and staged a funeral procession with a black shroud draped over the victim's crib.

thermore, unlike *Northcutt* which was a direct appeal, this case reaches the Court in the posture of a claim for a writ of habeas corpus. Petitioner therefore bears a much higher burden in challenging his conviction.

In this case, although the solicitor stated that he "expected" the death penalty, the totality of his argument did not "minimize the juror's own sense of responsibility for [Petitioner's] fate." *State v. Woomer,* 277 S.C. 170, 175, 284 S.E.2d 357, 359 (1981) (holding that solicitor's attempt to minimize jury's responsibility was improper). Notably, the solicitor referenced the jurors' promise to "base [their] verdict on the testimony and the exhibits and the law presented," and told the jury that after considering all of the evidence, they should give "the punishment that fits the crime." Moreover, the trial judge gave thorough instructions to the jury, including the statement that "you are never required to recommend the death penalty." Accordingly, we hold that Petitioner failed to show that, in the setting,[4] the solicitor's remarks constituted a denial of fundamental fairness shocking to the universal sense of justice.[5]

Petitioner has been afforded more than sufficient judicial review. Specifically, Petitioner raised this issue on PCR, but was denied relief on this ground. This Court reviewed Petitioner's direct appeal as well as his PCR proceeding. The federal district court, the federal circuit court, and the United States Supreme Court have also reviewed Petitioner's case.

---

4. We reject Petitioner's argument that "in the setting" refers to all cases containing similar facts. Rather, "in the setting" refers specifically to the totality of the facts and circumstances in the defendant's case.

5. We recognize that this Court has granted habeas relief in other cases. *See Tucker v. Catoe,* 346 S.C. 483, 552 S.E.2d 712 (2001) (finding the combination of the judges withholding of pertinent information regarding the deadlocked jury, the failure to instruct the jury not to communicate the nature of its division in future deliberations, and the giving of a coercive *Allen* charge shocking to the universal sense of justice) *and Butler,* 302 S.C. 466, 397 S.E.2d 87 (holding that a mentally retarded defendant was entitled to habeas corpus relief where coercive comments made by the trial judge violated the defendant's fifth amendment right). In our view, however, the circumstances in *Tucker* and Butler were extreme and, unlike Petitioner, the defendants in *Tucker* and Butler were denied fundamental fairness shocking to the universal sense of justice.

Finality must be realized at some point in order to achieve a semblance of effectiveness in dispensing justice. *Aice,* 305 S.C. at 451, 409 S.E.2d at 394. At some juncture judicial review must stop, with only the very rarest of exceptions, when the system has simply failed a defendant and where to continue the defendant's imprisonment without review would amount to a gross miscarriage of justice. *Id.* This is not such a case. We hold that Petitioner's conviction and sentence does not constitute denial of fundamental fairness shocking to the universal sense of justice.

### CONCLUSION

For the foregoing reasons, we deny the writ of habeas corpus.

WALLER, PLEICONES and KITTREDGE, JJ., concur. BEATTY, J., not participating.